## CARROLL v YOUNGSTOWN MUNICIPAL RY CO

Ohio Appeals, 7th Dist, Mahoning Co

Decided Oct 19, 1934

 

R. E. Nevin, Youngstown, and David C. Haynes, Youngstown, for plaintiff in error.
Harrington, Huxley & Smith, Youngstown, for defendant in error.

KLINGER and GUERNSEY, JJ, (3rd Dist) sitting by designation.

## OPINION

By ROBERTS, J.

It is claimed that the defendant was guilty of negligence in stopping its bus at this particular place, and jointly with the negligence of Banfield produced the accident. It is claimed that the plaintiff had become, under the conditions, a passenger of the defendant and was entitled to protection not accorded to him. It is claimed that the operator of the bus should have noticed the approach of the Banfield car, and have caused it to stop or warn the plaintiff of his impending danger. Upon the proposition as to the alleged negligence of the defendant in making this bus stop, reference is now made to the case of **Baker v Pendergast, 32 Oh St 494.** On page 499 it is said:

"He was acting on a known and not a supposed state of facts, which in the absence of any information to the contrary, the ordinance might have justified him in presuming. In view of this known state of facts, it was his duty to exercise reasonable care for his own safety. And from this duty he was in no degree relieved by the ordinance in question."

The plaintiff in this case was not relying upon a belief that this bus had no right to stop there. As a matter of fact, he was depending upon its stopping to take on passengers at that point. He is presumed to have known the law and known the existence of the ordinance prohibiting stops on bridges. He knew that that ordinance was not being enforced, that as a matter of fact regular stops were being made at this place for his convenience and the convenience of his fellow employes in the Republic Building.

In Hanna on Trial Evidence, §1385, it is said:

"Where complainant knew that the ordinance was being violated, he could not rely on the fact that others would obey it, either to excuse his own conduct or to make them guilty of actionable negligence."

The plaintiff, knowing of the stopping of the bus as a convenience to him, was seeking to avail himself of the opportunity thus afforded to become a passenger. In the opinion of this court he was not in a situation to complain of the violation of this ordinance.

In the case of **Hrovat v Cleveland Railway Company, 125 Oh St, 67,** at page 74 it is said:

"But assuming that the operation of the street cars of the Railway Company created the situation and conditions which, concurrently with the later intervening negligence of the Taxicab Company, caused plaintiff's injuries, such acts of the Railway Company became the remote and not the proximate cause of the accident. The agents of the Railway Company could not have reasonably anticipated the extraordinary, if not illegal, conduct of the taxicab driver. Such being the case, it is a well settled rule of law that such intervening negligence of the taxicab driver became the proximate cause."

We quote from 29 **Ohio Jurisprudence, page 500,** as follows:

"Wrongful acts of independent third persons not actually intended by the defendant, are not regarded by the law as natural consequences of his wrong, and he is not bound to anticipate the general probability of such acts, any more than a particular act by this or that individual."

At page 499 of the same volume it is said:

"Whenever a cause intervenes which is not a consequence of the first wrongful cause, which is not under the control of the wrongdoer, which could not have been foreseen by the exercise of reasonable diligence by the wrongdoer, and except for which the final injurious consequences would not have happened, the second cause is ordinarily regarded as the proximate cause, and the other as the remote cause."

It is complained that the defendant was guilty of negligence in making or causing to have made the openings in the railing and in the guard rail and splash board of the bridge for the convenience of passengers at the point in question. We do not think that that could be regarded as a proximate cause of the accident.

Again, it is claimed that the alleged negligence of the company in stopping the bus caused a blockade of vehicular traffic, which resulted in this accident. Without recognizing this claim as an indication of negligence in this accident, the evidence does not seem to indicate any particular blockade of traffic to which this accident might be attributable. The bus was standing still at the curb, which necessitated south bound traffic passing around it, which was being done. North bound traffic was coming in two lanes, evidently passing freely except for such effect as 'the crossing of the bridge by the intending passengers may have had upon the situation.

Banfield, whose car collided with the plaintiff, was not being held up by traffic, but evidently becoming impatient to pass other vehicles, pulled out of the left line of traffic, north bound, further to the left and ran down the plaintiff. Concerning the complaint that the defendant was guilty of negligence in not warning the plaintiff of impending danger, that, as alleged, the defendant's driver was in a position to see the Peerless automobile approaching in time to warn plaintiff of the danger, the allegations of the petition do not justify this contention. It is alleged that Banfield suddenly pulled out of his line of traffic, approached and passed the bus at a speed of forty-five miles an hour; that plaintiff was standing between the rails waiting for a south bound car to pass. There was the noise of the traffic and only a few seconds intervening. It is not to be assumed that the bus driver was under any duty to observe or warn some one on the street, who, as it is claimed, had not as yet become a passenger. In the case of **Reining v Northern Ohio Traction Company, 107 Oh St, 528,** the second paragraph of the syllabus reads as follows:

"It is not the duty of a conductor or motorman to warn passengers upon leaving a street car car at a regular stop of the danger of automobile traffic in a city street, and failure to caution such passengers of approaching automobiles will not render the company liable for injuries caused by an automobile passing the car at an excessive rate of speed and striking the passenger after he had alighted from the street car in safety."

On page 531, in the opinion, it is said:
"Under the evidence the decedent had taken at least one or two steps toward the curb from the place where he had safely alighted from the street car. The decedent was therefore no longer a passenger, for it is the generally accepted view that one who has alighted from a street car and is in safety upon the highway is no longer a passenger, but is thenceforth a traveler upon the highway, subject to all the duties and obligations imposed upon such travelers, and the railway company is not responsible to him as a carrier for the condition of the street, or for his safe passage from the car to the sidewalk."

On page 533 the court with approval refers to Chesley v Waterloo C. F. and N. R. Co., 188 Iowa, 1004, as follows:
"The court held that a street railway company which permits a passenger to alight from a car at a place not ordinarily used in discharging passengers, and where many automobiles are accustomed to pass, is not bound to warn him of the danger from passing cars, nor to protect him from such danger after he has left the car."

Then the court quotes with approval from the case of *Oddy v West End Street Ry. Co.,* 178 Mass., 341, as follows:
"Street car companies, carrying passengers in ordinary public streets or highways, are not negligent in not providing means for warning passengers about to leave a car of the danger of colliding with or of being run over by other vehicles in the street. The risk of being hurt by such vehicles is the risk of the passenger and not that of the carrier. It is not a danger against which the carrier is bound to protect the passenger or to give him warning."

Now, citing the case of **The Cleveland Railroad Company v Sebesta et, 121 Oh St, 26,** the syllabus reads as follows:
"It is the duty of a passenger upon a street car, when alighting from the car upon a public street or highway, to exercise ordinary care for his own safety against danger arising from the use of the street at that time and place by vehicular traffic; and when the stop of a street car is at a point where vehicular travel is not held in abeyance by a traffic officer, signal light or other regulations, while the street car is standing at such stop, the ordinary care required on the part of the passenger leaving the car at such point includes the duty of the passenger to look in the direction from which vehicular travel may reasonably be expected to approach, and such looking should be done at a time when it will be effective to serve the purpose designed by it; and a failure to so look con-

stitutes such negligence as will bar a right of recovery for injuries by collision with such vehicular travel which might otherwise be avoided by the observance of the care required."

In the opinion, on page 33, it is said:

"The duties of a street car conductor carrying passengers in a large city are too well known by all to need comment. Manifestly, these duties cannot be safely or efficiently performed if the conductor undertakes to act, unsolicited, as adviser-general to passengers who appear to be entirely competent to attend to their own business in the manner of entering and leaving the car."

On page 34 it is said:

"The familiar principle that anyone stepping into a danger zone, with knowledge of the danger, must give heed to his surroundings and look for the approach of dangerous objects at a time when the looking will be effective, could not possibly be better illustrated than as in this case. This is not a case where different persons might draw different inferences from admitted or proven facts."

In the case of **Cleveland Railway Company v Karbole, 125 Oh St, 467,** the first paragraph of the syllabus reads as follows:

"A street railway company owes no duty to a passenger to warn him, upon leaving the street car at a regular stop, of the approach of an automobile; and its failure to do so does not constitute negligence."

In the case of **Traction Company v Kolzenkamp, 74 Oh St, 384,** it is said:

"The relation of carrier and passenger arises from contract. The passenger must, expressly or impliedly, have agreed to compensate the carrier to board him, and the carrier must expressly or impliedly have agreed to carry him, and performance of the contract must have commenced and the passenger be under the care of the carrier."

In **Sinnock, Admrx. v The Pennsylvania Company, 25 C.C. (N.S.), 479,** it is said:

"An intending passenger has, to a greater or less extent, control over his movements and can therefore exercise corresponding precautions to protect himself from danger. * * * When a passenger is actually aboard a train he has substantially no control over his movements; he has in effect wholly surrendered himself to the care and control of the carrier and the

carrier must therefore exercise the highest degree of care to protect him."

In 6 **Ohio Jurisprudence,** 908, it is said:

"When one with the intention of taking passage on a particular conveyance establishes physical contact therewith in the act of entering the same, at a proper place for such entrance or boarding, when it is standing at a time and a place usual or customary for receiving passengers."

On page 910 of the same authority it is said:

"The ultimate criterion seems to be whether or not the person intending to take passage has actually placed himself under the care of a carrier for transportation under the contract of carriage."

In Nellis on Street Railways the following is said:

"A pedestrian approaching and intending to board a street car which in response to a signal from him has stopped, is not a passenger before he reaches the car. The relation of carrier and passenger is contractual and does not arise out of the fact that a person runs toward a moving car to get on board. And the mere facts that a person signals a street car to stop in order that he might get on board, and that the driver intended to stop the car for that purpose are insufficient to establish the relation of carrier and passenger and though the relation of carrier and passenger may indeed be implied from slight circumstances, yet one who intends to take a passage on a street car cannot be regarded as a passenger while he is in the act of entering it, unless he do so with a proper degree of care and prudence."

Having thus given some consideration to authorities which are believed to be pertinent, a question arises, and that is whether or not the plaintiff had become a passenger as a matter of law; and the defendant thereby assumed the duty for his protection. It is the opinion of this court from a consideration of the pleadings and the authorities cited, that at the time of this accident when the plaintiff received his injuries, that he had not become a passenger and the defendant had assumed no liability as a carrier. Authorities have been read and can more reasonably be found concerning the duties of carriers when passengers are permitted to alight. In alighting they are under the control of the carrier and there is reason for the exercise and the power to exercise a greater control over the movements of the passenger than there

is where a person is intending to become a passenger, has not as yet come in contact with the vehicle of conveyance. If it can be said that Carroll, standing a considerable distance away from the bus, in the center of the south bound street car tracks was a passenger because he was intending to become such, where can the line of demarcation be located under such circumstances between passengers and non-passengers? If at this distance such relation existed, why could the rule so established not reasonably be extended a greater distance or to the opposite side of the street? The carrier had never become in a situation where it could exercise any care. The defendant had no authority or power to control the traffic on the bridge. The operator of the bus, from the allegations, presumably did not see the approaching Banfield car and had no opportunity to warn the plaintiff of its approach. It is difficult to imagine, in view of the circumstances, what the driver of the bus could have done to promote or advance the safety of plaintiff in the passage through the traffic and across the bridge.

The accident and injury were caused, as indicated by the amended petition, by the excessive speed of the driver of the Banfield car upon that portion of the street where he had no right to drive.

It appears to this court that the driver of this car and its coming in contact with the plaintiff was the proximate and real cause of the accident, to which the defendant carrier did not contribute.

As conclusion hereof, we fail to find that the allegations of the amended petition indicate liability or negligence on the part of the defendant company in thus stopping and operating its bus, and therefore the judgment of the Court of Common Pleas is affirmed.

Judgment affirmed.

KLINGER and GUERNSEY, JJ, concur in the judgment.