EMILY HOLLGREN, Appellee, v. DES MOINES CITY RAILWAY COMPANY, Appellant.

RAILROADS: Accident at Crossing—Negligence—Directed Verdict.
1  Verdict must not be directed against plaintiff at any stage of the trial of an action based on negligence, unless the court can find as a matter of law (a) that the record shows no evidence having any fair tendency to show the existence of the negligence charged against defendant; or (b) that, if there is such evidence of defendant's negligence, there is no evidence on which the jury could find that plaintiff was free from contributory negligence. *Held*, directed verdict properly refused.

PRINCIPLE APPLIED: Plaintiff was riding east in a single buggy on the south side of a street car track. The horse was, ordi-

narily, gentle, but on this occasion was restless. Another party was driving. When the driver reached a cross street on which she desired to turn north, a street car came up behind them. The driver, on entering the cross street and again in the middle of the street, looked and saw that the car had stopped. Just then an automobile from the south, on signal of the traffic policeman to so do, passed to the north and the driver of the buggy immediately turned to the north and followed the automobile, so doing, as she supposed, in obedience to the policeman's signal. The motorneer saw this signal. The street car was moving at from two to three miles an hour and could have been stopped in from two to six feet. The motorneer, after he started, went some thirty or forty feet before hitting the buggy with the car fender, and claimed that he was surprised by the buggy's turning to the north across his track. The negligence charged was (a) excessive speed, (b) noncontrol of car, (c) failure to keep proper lookout and (d) failure to ring bell. *Held,* directed verdict for defendant properly refused.

RAILROADS:   Accident at Crossing—Street Railways—Reciprocal
2   Rights and Duties. Reciprocal rights and duties of street railways and the public at public crossings discussed.

APPEAL AND ERROR:   Assignment of Error—Failure to Argue—
3   Waiver. Waiver of an assignment of error results from failure to argue the same.

NEGLIGENCE:   Acts or Omissions Constituting Negligence—Exces-
4   sive Speed—Instructions. Excessive speed is an expression relating solely to the particular circumstances of each case. Any rate of speed, howsoever slow, might be ''excessive'' under possible circumstances. *Held,* the term properly employed under the evidence in present case.

EVIDENCE:   Negligence—Non-Ringing of Bell at Crossing. Whether
5   a bell was rung at a street crossing is properly submitted to the jury under the evidence of two witnesses that they heard no such signal, such witnesses being in a position and mental attitude to have heard the signal, had it been given.

DAMAGES:   Personal Injuries—Impairment of Earning Capacity—
6   Partnership. One negligently injured by another may recover in his own right for impairment of earning capacity due to such injury, even though he is a member of a partnership or a joint enterprise with another.

EVIDENCE:   Judicial Notice—Ordinance. Courts do not take judi-
7   cial notice of municipal ordinances.

*Appeal from Polk District Court.*—Lawrence DeGraff,
Judge.

Friday, March 10, 1916.

Action at law for the recovery of damages on account of
personal injury. Verdict and judgment for plaintiff, and
defendant appeals.—*Affirmed.*

*Parker, Parrish & Miller* and *A. G. Rippey,* for appellant.

*Stipp, Perry & Starzinger,* for appellee.

Weaver, J.—The defendant operates a street railway in
Des Moines, and plaintiff is a resident of the same city. One
of the railway tracks is laid along West Locust Street and
across West Fourth Street. On the day in question, plaintiff
was riding in a top buggy driven by another woman, Miss
Sandell. They drove east on the south side of the track from
Fifth Street toward Fourth Street, intending to there cross
the track and proceed to the north on Fourth Street. As they
approached Fourth Street, one of the defendant's cars came
on, moving in the same direction, but a little in the rear of
the buggy, and stopped on the west side of the street crossing.
The driver of the buggy was sitting on the left, or north end
of the buggy seat, and says that, as she entered upon the
crossing of Fourth Street, and again as she reached the middle
of the crossing and was about to make the turn, she leaned
forward, looked around, and saw that the car had stopped.
At or about the time that she made the turn, she says the
traffic policeman gave a signal which she interpreted as being
for her to proceed, and, driving around the policeman, she
turned to the left to cross the track on her way up Fourth
Street. The horse, ordinarily gentle, was somewhat restive on
this occasion and difficult to hold, and was moving at a brisk
walk or trot. At about the time that the buggy began to turn
north, the car resumed its movement to the east, bringing its
fender into collision with the wheel of the buggy which had

not cleared the track.   As a result of the collision, the buggy
was overturned, or so nearly overturned that plaintiff fell
out, receiving bruises and injuries of which she complains.
The motorman in charge of the car testifies that, having
stopped as he came to the crossing, he started again on signal
of the policeman, and, while he saw the buggy, he assumed
that it was proceeding eastward, and that its turn to the north
was a surprise to him and too late to bring the car to a full
stop, though it did stop almost immediately after the colli-
sion.   Whether the motorman sounded his bell as he entered
upon the crossing is a subject of dispute in the testimony.
The distance that the car moved from its stopping point to
the point of collision was from 34 to 40 feet.   The motorman
says that the car was moving at not more than two to three
miles an hour, and that under such circumstances, he could
ordinarily stop the car within two to six feet.   He saw the
policeman signal the women to proceed, before he received the
signal directed to himself.   It should also be said that the
women testify that, as they came to the point where they
turned to the north, an automobile coming from the south
on Fourth Street passed to the north on signal of the police-
man, and they followed immediately in its wake across the
track.

The negligence charged by the plaintiff is: (1) In operat-
ing the car over the crossing at an excessive rate of speed
and without exercising ordinary care in observing the track
ahead; (2) in operating the car without having it under
such control that it could be stopped in time to prevent the
collision; and (3) in failing to ring the bell or give other
warning of the approach of the car.

The answer is a denial of the charge of negligence.   At
the close of the plaintiff's evidence, and again at the close
of all the evidence, defendant moved for a directed verdict
in its favor, because of failure of evidence to sustain the
charge of negligence against the defendant, and because the
evidence shows the plaintiff chargeable with contributory

negligence as a matter of law. These motions were denied, and upon submitting the issues to the jury, a verdict was returned for plaintiff for $700.

The numerous errors assigned may be grouped under three heads: First, the denial of the motions for a directed verdict; second, the refusal of the court to give certain requested instructions to the jury; and, third, the charge to the jury given on the court's own motion. In this order we will consider them.

I. Should a verdict have been directed for the defendant? To sustain the position taken by appellant at this point, the court must find as a matter of law that no evidence was adduced having any fair tendency to show

1. RAILROADS: accident at crossing: negligence: directed verdict.

want of proper care on the part of defendant's motorman in the management and control of the car, or the court must find as a matter of law that there is no evidence on which the jury could properly find that plaintiff herself was free from contributory negligence. Without attempting to rehearse the evidence, we have to say that we think neither proposition can be affirmed. So far as the first point is concerned, giving the evidence, as we must, its most favorable construction in support of the court's rulings and the jury's verdict, the jury could properly find that the motorman, starting at a point from 30 to 40 feet west of the point of collision, with his car under such control that he could stop it within a distance of from two to six feet, and with his face in direction to see the crossing and all persons and vehicles in that vicinity, should, in the exercise of reasonable care, have discovered and realized the peril in time to avoid the injury. That conclusion is emphasized when we add that there was evidence which the jury was entitled to believe that, after the horse and buggy had faced to the north, the policeman signaled to go ahead, and that the horse was driven closely behind an automobile also signaled forward. If this was true, and the jury could so find, it is scarcely possible

that the motorman, in the exercise of reasonable care, would not have seen the necessity of stopping the car sooner than he did.

Nor can we say that there was an entire failure of the plaintiff to show reasonable care on her part, and this is true even if we should say (which we do not decide) that negligence, if any, of the driver of the buggy is imputable to her. They had the right to drive upon the street and over the crossing, a right which the law regards as of equal sanctity with that of the car company, though, of course, owing to the difference in the character of the vehicles, if it occurs that a street car and a lighter or more mobile vehicle approach a crossing at the same time, or so near the same time as to reasonably indicate the danger of collision if both proceed, it is the duty of the driver of the latter to yield precedence to the former. It is at the same time no less the duty of the operator of the street car to exercise the company's rights upon the streets, including the right of preference above mentioned, with due regard to the safety of others who, as members of the general public, are entitled to the use of the public ways. Where a crossing is much frequented and travel and traffic tend to congestion, and where promptness and activity, if not haste, are required, it is not always easy to say whether all parties have observed these reciprocal duties; and in case of accident or collision, the proper allotment of blame, if any there be, depends upon inferences to be drawn from circumstances, some, if not all, of which are in dispute; and in most cases, it presents an issue of fact for the jury. Giving plaintiff the benefit of the showing made in her behalf, the driver of the buggy did look for the car to ascertain if she could make the crossing; she looked just as she was ready to turn to the north, and saw that the car had stopped at a distance which none estimate at less than 30 feet. She was signaled forward by the policeman. She followed very closely behind another vehicle going north, and the

2. RAILROADS: accident at crossing; street railways: reciprocal rights and duties.

finding of the jury that she exercised the care of an ordinarily prudent person under all the circumstances is not an unjustifiable conclusion. It is not impossible that some of the several signals given by the policeman were misinterpreted, and that either the motorman or the driver of the buggy acted upon a signal intended for the other or for some third person; or it is not impossible that the policeman himself became confused in giving the signals. Of course, the defendant could not be held liable for any confusion or negligence on the part of the policeman, and whatever may be true in this respect is material only as it bears upon the question of plaintiff's care for her own safety. Whether she did observe the proper measure of care is, under the evidence, an inquiry which cannot be answered as a matter of law.

II. Did the court err in refusing defendant's request for instructions to the jury? Error was assigned by appellant upon each of eight such refusals, but none of these assignments has been argued, and we must treat them as having been waived.

**3. APPEAL AND ERROR: assignment of error: failure to argue: waiver.**

III. Did the court err in the instructions to which exceptions have been taken and argued? Most of these objections are grounded upon the assumption that there is an entire absence of testimony showing negligence of the defendant or showing plaintiff's freedom from contributory negligence. These objections are identical with those that we have considered in connection with the motion for a directed verdict, and for the reasons there stated, they must be overruled.

It is objected, however, that there was no evidence showing excessive speed in the movement of the car, and it was therefore error to mention it in the statement of issues. Excessive speed is a relative expression. What is excessively fast under some conditions may be exceedingly slow under others. Here, for example, the motorman started his car in the direction of the crossing 30 to 40 feet away,

**4. NEGLIGENCE: acts or omissions constituting negligence: excessive speed: instructions.**

having in his view the plaintiff and others in close proximity to the track, and some of them moving at right angles across the track; and with the ever-present possibility of collision at that point, common prudence would lead him to maintain a very moderate speed until that danger was passed, and any rate of speed which he could not promptly control and stop if need be would be excessive. Counsel themselves say that, "if any question was properly submitted to the jury, it was as to the alleged failure of defendant to stop the car in time to prevent the collision"; and, if we were to concede this to be true, the failure to stop the car has such natural and immediate connection with the speed at which it was being moved that such speed was a material allegation to which the attention of the jury might rightfully be called.

It is also said that there is no evidence of failure to ring the bell, and it was improper to mention that allegation to the jury. In this respect counsel misunderstand the record.

5. EVIDENCE: negligence: non-ringing of bell at crossing.

Miss Sandell, the driver of the buggy, testified that she heard no bell or warning of any kind. Again, the witness Ashing also says that he was standing at a door on the street corner, saw accident in part, and adds, "I think the motorman did not give any signals about the time of the accident." The testimony of these witnesses was sufficient to take that matter to the jury.

Finally it is said that the evidence shows that plaintiff and Miss Sandell had been for many years living together, engaged most of the time in the work of laundering lace curtains for customers in and about the city,

6. DAMAGES: personal injuries: impairment of earning capacity: partnership.

and upon this conceded fact, appellant contends that it was error for the court to instruct the jury that, if plaintiff was found entitled to a verdict, she could recover, among other things, for the impairment, if any, of her ability to earn money during the time the evidence showed her to have been suffering from her injury. Counsel say that the court should

have instructed that the women were engaged in a partnership or joint enterprise and that, as a matter of law, if there was any loss of time or earnings because of plaintiff's injury, the right, if any, to recover damages therefor accrued to the partnership alone, and they could not be recovered at the individual suit of the plaintiff. It is frankly conceded by counsel that "the question thus raised is unusual and perhaps novel", a proposition with which this court is in entire accord. No authority is cited in its support, and we cannot conceive upon what principle such claim can be sustained. There was no error in the instruction criticized nor in refusing to direct the jury as requested in this respect.

III.   Counsel for appellant in argument further appear to lay stress upon the failure of the trial court to charge the jury upon the effect of a street traffic ordinance of the city, which, among other things, prescribes certain

7. EVIDENCE: judicial notice: ordinance.

signals which the driver of a vehicle is required to give in approaching a street corner around which he expects to turn. It is enough to say in this respect that the ordinance was not in evidence before the jury, and there was no proper foundation for such instruction. It is true that one section of the ordinance was offered by the defendant and at first admitted, but later the ruling was changed and the evidence excluded. No error is assigned upon its exclusion, and the case is to be considered and disposed of by us as if such offer of evidence had never been made. This court will not take judicial notice of the provisions of the ordinance nor apply its provisions in a case where it has not in some proper manner been made a part of the record.

No prejudicial error appearing in the record, the judgment is—*Affirmed.*

EVANS, C. J., DEEMER and PRESTON, JJ., concur.