John E. Moss, Administrator, Appellee, v. Mason City & Clear Lake Railroad Company, Appellant.

No. 41847.

December 12, 1933.

Smith & Feeney, for appellant.

J. E. Williams and H. J. Bryant, for appellee.

Mitchell, J.—The appellant, Mason City & Clear Lake Railroad Company, operated a street car system in Mason City under a franchise duly granted by the municipality, part of which system is operated upon Federal avenue. Federal avenue is a street running north and south, and is one of the main business streets in Mason

City, and a part of what is known as U. S. Highway No. 65. At 16th Street North the street car line and tracks turn west upon 16th Street Northwest. 16th street east of Federal avenue does not continue directly opposite from 16th street west of Federal avenue, but lies about a street width south, the north line of 16th Street Northeast being about five feet north of the south line of 16th Street Northwest. At the intersection of Federal avenue and 16th Street Northwest, Federal avenue from curb to curb is 40 feet in width and is paved. 16th Street Northeast at the intersection with Federal avenue is 50 feet from curb to curb. Neither 16th Street Northeast nor 16th Street Northwest is paved. On Federal avenue, until the curve to the west to 16th street starts, the street railway tracks lie in the middle of the street. The distance between rails is 4.7 feet, measured from the outside of the flange. The point of the curve of the street railway track where it starts to turn west from Federal avenue into 16th Street Northwest, according to appellee, is 49 feet south of the south curb line of 16th Street Northwest. The street car tracks extend on Federal avenue better than 70 feet north of the north line of 16th Street Northwest, where they end and there is a switch turning from the north into 16th Street Northwest.

Shortly before noon of the 23d day of April, 1930, one of the appellant's street cars was being operated on Federal avenue going north. It was being operated by motorman Harry J. Berry. The motorman was operating the street car from his position at the front thereof, with a door directly at his right for the entry of passengers. As the street car approached 16th Street Northeast, the motorman saw some ladies standing near the northeast corner of the intersection of Federal avenue and 16th Street Northeast. He then stopped the street car for the purpose of permitting these ladies to board the car, but he did not stop it until he had turned upon the curve to the west. There is some conflict in the evidence in regard to how far he had turned the street car to the west. Some testified that the street car had turned 2 feet and others as much as 5 feet. When he had stopped, he opened the door for the women who had been standing on the corner to enter. The appellee's decedent, who was one of the ladies waiting on the corner, was struck about 2 feet west of the east curb of Federal avenue, as she started to cross the street to enter the front door of the street car. She was struck by an automobile operated by one W. M. Strand. There is no

claim in the record that she was struck by the street car. Strand was driving from Decorah to Des Moines and was using highway No. 65. He was driving down Federal avenue from the north. He testified that he was not familiar with the streets in that vicinity; that as he approached 16th street from the north he saw the street car coming from the south and saw it for quite a distance before he approached 16th street. He was driving on the right-hand side or west side of Federal avenue. He had not traveled this road before and did not notice the street on his right or any street car tracks turning to the west. There is some dispute in the record as to where he was when he first saw the street car start to turn to the west into 16th Street Northwest. A plat was introduced in evidence and Strand put a mark by drawing a circle on the plat at the point where he thought he was when he first noticed the street car turning to the west. This mark was on Federal avenue, approximately in the center of 16th Street Northwest. If he was at that point at the time the street car started to turn to the west, he was at a distance in excess of 40 feet north of the street car. However, at another place in the record he testified he thought he was between 10 and 15 feet north of the street car when it suddenly turned to the west. According to his testimony, he could not turn to the right because he had gone too far across 16th Street Northwest intersection and had approached too close to the street car; that the street car was moving and he had no knowledge that it would stop; that, in order to prevent a collision with the street car and in order to save his life and that of his wife, he turned to the left; that just before turning he looked to the left of the street car and saw nothing to interfere with him going down on the east side of the street; when he had gotten over on the east side of the street and about 2 feet from the east curb line of Federal avenue, the appellee's decedent stepped out in front of his car, and at that place, for the first time, he applied the brakes, but it was too late, and he ran over the appellee's decedent, injuring her, from which injuries she died shortly thereafter.

The appellee was duly appointed administrator of the estate of Hazel B. Moss, and, as such, brought this action to recover damages against the street railway company. Evidence was introduced. At the close of the plaintiff's (appellee's) evidence, the street railway company made a motion for a directed verdict upon the grounds, among others, that the appellee had failed to show

any negligence on the part of the appellant, as alleged in his petition; and that the acts of the appellant were not the proximate cause of the injuries complained of. The lower court overruled the motion. The appellant submitted its evidence, and, at the close of the evidence, both sides having rested, appellant renewed its motion for directed verdict. The court overruled the same. The appellant has appealed to this court from the ruling on the motion to direct verdict and from the ruling on motion for new trial and exceptions to the instructions.

We quote from appellee's argument:

"It is the appellee's contention that the motorman, seeing or being in a position to see the approach of Strand from the north, and observing that the appellee's intestate was waiting on the east side of Federal avenue to board the street car, if he was in the exercise of ordinary care he should have so driven the street car as to avoid collision or injury to the occupants of Strand's car or to the appellee's intestate, and that when he observed Strand approaching on the right-hand side of the street to within a short distance of the front end of the street car, he should not have turned west upon the switch track toward and in front of Strand, and that when he did so such act constituted a violation of his duty and was an act of negligence such as to incur liability upon the street car company for injuries or damages proximately resulting therefrom."

It will be well, at this point, to look to a few of the authorities to guide us in reaching a decision. Was Mrs. Moss a passenger, and what duty did the appellant company owe her? In Chesley v. Waterloo, Cedar Falls & Northern R. R. Co., 188 Iowa 1004, at page 1006, 176 N. W. 961, 12 A. L. R. 1366, it is said:

"While the defendant was on the car, while he was a passenger, the company owed him the high duty which the law imposes upon common carriers. When that relationship ceased, this high duty ended. When he passed from the car onto the street, his relationship with the company ended, and he became, as any other traveler upon the public highway, subject to the perils of such travel."

In the case of Morris v. Omaha & Council Bluffs Street Railway Co., 193 Iowa 616, at page 618, 187 N. W. 510, 511, it is said:

"If the passenger has safely alighted from the car and enters upon a public highway of his own choosing, the relation of passenger terminates, and consequently the duty owing to the passenger by the carrier. The public street is not a passenger station, and the condition of a street or public highway not used by the company in the operation of its cars is not chargeable to the carrier."

And continues at page 619:

"The relation of passenger terminated when plaintiff entered upon the highway. Some point must be reached when this relationship ends, and it must be such a point that is free from all speculation and uncertainty. We accept the pronouncement of the Massachusetts Supreme Court in adopting the rule that this relation terminates the moment the passenger descended to the street."

In the case at bar, Mrs. Moss was standing on the curb, waiting to take passage on the street car. She left the curb for the purpose of crossing the street and boarding the street car, but just as she left the curb and within a foot or two of the curb she was struck down by the car driven by Strand and was killed. At the time of the accident she had not reached the street car, had not boarded it, but was upon the public street, where she had the same rights that every other person had. She was only a traveler upon the public highway, to whom the appellant owed only such ordinary care as it owed to every other traveler upon such highway.

The first ground of negligence that the appellee offers is that the appellant failed to keep a lookout ahead and observe the approach of the automobile driven by Strand from the north. Assuming that such was true, and that the record showed that the operator of the street car did not maintain a proper lookout, in what respect did such failure contribute to the injury and death of deceased? Strand was a traveler upon the public highway. The operator of the street car had the right to assume that the driver of the approaching automobile would exercise ordinary care for his own safety and for the safety of others. When the driver of the automobile approaches an intersection where there is a street car track, upon which a street car is also approaching, it is the duty of the driver of the automobile to give precedence to the street car. This doctrine is announced in Hollgren v. Des Moines City Railway Co., 174 Iowa 568, at page 573, 156 N. W. 690, 692:

"They had the right to drive upon the street and over the crossing, a right which the law regards as of equal sanctity with that of the car company, though, of course, owing to the difference in the character of the vehicles, if it occurs that a street car and a lighter or more mobile vehicle approach a crossing at the same time or so near the same time as to reasonably indicate the danger of collision if both proceed, it is the duty of the driver of the latter to yield precedence to the former."

In Bridenstine v. Iowa City Electric Railway Co., 181 Iowa 1124, at page 1129, 165 N. W. 435, 437, this court said:

"Their right therein was of equal degree with that of the defendant to operate its cars thereon. Each was required to keep reasonable outlook to avoid collision, and if it was reasonably apparent that to go ahead was to invite danger of collision, it was the duty of the driver of the carriage to yield the way. On the other hand, it was the duty of the driver of the car to be watchful to know that a crossing over which he was about to pass was clear, and if he saw, or in the exercise of reasonable care ought to have seen, that a traveler on the street was using or was about to use said crossing, and that a collision was threatened, it was his duty to use every reasonable means at his command to stop his car or to so reduce his speed as to prevent it."

The evidence which is most favorable to the appellee's theory is the evidence of the witness Strand, who was the driver of the car that ran into Mrs. Moss. So that there can be no question as to what he testified, we are setting out the essential parts of his evidence:

"A. Well, I noticed that, I slowed up and tried to observe them, how far they were going and if it was so close, closed me out on the right-hand and then they were moving as I saw they were, that it endangered my life, and I didn't want to make an effort to pass on the right-hand side so I turned to the left. * * *

"The street car was moving all the time I was going. I looked at it after the accident, and it had gone around from the center of the street to the west about five feet. There might have been space enough to the west of the car for me to have driven through.

"Q. Now, when you first saw the street car begin to turn,

what did you do towards stopping your car? A. Well, I did not make any attempt to stop it.

"Q. Did you make an attempt to stop your car at any time, Mr. Strand? A. Yes, when I had the accident, I certainly did.

"Q. Where was your car when you first began to stop it? A. When my—I turned to the left and I happened to strike these women, then I tried with all my power to stop immediately.

"Q. Was it before or after you struck the women that you put on your brakes or attempted to stop the car? A. Just as soon as I saw them, not any before did I try to stop it.

"Q. How far were you away from them when you first saw them? A. The first I saw them I was only two or three feet away from them, I was right up.

"Q. You then applied the brakes on the car? A. Yes, sir, I did.

"Q. Is that the first time you applied the brakes? A. That is the first time I definitely determined to stop it.

"Q. How fast were you going at the time you applied the brakes? A. Well, I should judge about fifteen or eighteen miles.

"Q. How far did you go after you applied the brakes until you stopped the car? A. Oh, I think about three, four or five feet probably. The first time I saw the women I was within three feet of them, and they were right up against the sidewalk going out into the street. This was on the east side of Federal avenue. I had crossed over from the west side of Federal avenue to the east side and near the east curb when I struck the women. I did not see these women before they stepped into the street, and did not see anyone there. The brakes on my car were working pretty good."

Thus it appears from the evidence of the witness Strand, taking his evidence in the most favorable light to the appellee's case that he was, at the time he first saw the street car turn to the west, a distance of between 10 and 15 feet north of the street car, and that at that time he was on the west side of Federal avenue, being west of the street car track. Federal avenue is 40 feet wide from curb to curb. The street car track is approximately in the center of the street. Immediately upon seeing the street car start turning to the west, Strand drove his car to the left and drove diagonally

across the street car track and across to the east side of Federal avenue within 2 or 3 feet of the east curb line, where he struck and ran over Mrs. Moss. In other words, Strand drove a distance of better than 30 feet from the point where he turned his car to the left, the place where he said he first noticed the street car turning to the west, to the place where he struck Mrs. Moss, which was 2 or 3 feet from the east curb line of Federal avenue. He was traveling, according to his own testimony, at a low rate of speed. He could have stopped his car, according to his testimony within a few feet. In fact, he testified he did stop his car within a distance of 3 or 5 feet. Under Strand's own testimony, he could have stopped his car without turning to the left for he was within a distance of between 10 or 15 feet north of the street car when he saw it turn to the west. And he could have stopped the car long before he struck Mrs. Moss had he desired to stop it, but Strand testified that he did not at any time apply the brakes or attempt to stop his car or intend to stop his car until the ladies who were on the east side of Federal avenue stepped in front of his car. In face of such a record, a record made by the testimony of appellee's own witness, Strand, the accident could have been avoided had Strand applied the brakes and stopped his car.

The burden of proof that the negligence of the appellant company was the proximate cause of the injuries rested upon the appellee in this case. The appellee has failed to carry this burden. The alleged negligence of the appellant company was not shown to be the proximate cause of the injuries. In view of such a record, the lower court should have sustained the motion to direct a verdict for the appellant and its failure to so do was error. This case must be, and it is hereby, reversed.

ALBERT, C. J., and EVANS, STEVENS, KINDIG, CLAUSSEN, ANDERSON, and KINTZINGER, JJ., concur.