## KLOVEDALE v OHIO PUB SERVICE CO

Ohio Appeals, 5th Dist, Richland Co

Decided Sept 29, 1936

Lewis Brucker, Mansfield, and H. M. Rust, for appellant.

Henkel & Gongwer, Mansfield, for appellee.

## OPINION

### By SHERICK, J.

This cause comes into this court on the plaintiff's appeal on a question of law arising out of the direction of a verdict by the trial court in defendant's favor, at the conclusion of the plaintiff's case. Prior thereto, Ethel M. Gump had been dismissed as a party defendant to the action. No complaint is registered as to the court's action in this respect.

Before any statement of the issues as made by the pleading and the evidence is attempted it seems necessary to epitomize the setting of this accident.

Lexington Avenue, a busy thoroughfare, runs south from the hub of the city of Mansfield, Ohio. At a point thereon, Scholl road on the east and Davis road on the west flow into Lexington Avenue. Both roads enter from the south at angles of about thirty degrees with respect to the main artery, so that the streets at this point, where they cut off south of the intersection, are like unto a three-pronged fork. Lexington Avenue is a thirty foot street, as is Scholl road. Davis road has an eighteen foot roadway. The point made by the intersection of Lexington Avenue and Scholl road is rounded off. On the evening of this accident, the appellee's bus, headed south, had stopped at this point, two feet off of the Lexington Avenue roadway. This was a regular stop. The bus had been standing there for two or three minutes. Its only door was at the front right end. This door had then been closed. For the immediate purpose of this action, appellant is found near a tree on the west side of Davis road, about twenty feet below its point of intersection with Lexington Avenue. In some manner, not precisely disclosed by the evidence, the appellant, intending to board the bus, crossed the point of intersection made by Davis road and Lexington Avenue, on Lexington Avenue, and at a point some place between the center line of Lexington Avenue and four feet from the bus door, was struck by defendant Gump's car, which was being driven north, with headlights lighted, and seriously injured. It is not claimed that appellee's bus was parked on the left hand side of Lexington Avenue.

The appellant asserts that the bus company was negligent in the choice of its stop and in receiving and discharging passengers thereat; that it was not done at a place of safety. It is also maintained that the bus driver, after seeing her in a perilous position, made no effort to warn her, and that it was his duty to do so. The appellee denied all claims of negligence upon its part. It admitted that appellant had placed herself in the way of dangerous traffic. It charged that the direct and proximate cause of appellant's injury was her own negligence. The trial court sustained the motion for directed verdict upon two theories: First, that no negligence on the part of the bus company was the direct or proximate cause of the accident; second, that the plaintiff's evidence strongly presupposed negligence upon her part, which contributed directly to her injury.

We might hastily conclude in all propriety that the trial court was right in finding from the evidence that the appellant had voluntarily and knowingly placed herself in a position of great danger, when she might have boarded this or another bus at a point or by a way known by her to be safe, and that her known utilization of the dangerous way, as evidenced, clearly established negligence upon her part which contributed directly to her injury; but to so abruptly end the matter would be to disregard the principal questions made, respecting a bus company's duties towards one who intended to become a passenger at a regular stop, when that intention was not communicated to the bus driver. At the risk of a charge that what we shall hereinafter

say is purely obiter, we propose to express the views within us on the questions so strenuously argued.

Unlike those utilities which operate on their own properties, bus companies more closely resemble street car companies, which operate upon city streets over which they exercise no control, the principal difference being found in that busses are driven over all portions of streets available for vehicles and not upon a certain fixed track. Our Supreme Court, in **Cleveland Ry. Co. v Crooks**, 125 Oh St 280, 181 NE 102, has so recognized. This was a case of one alighting in the midst of traffic, who had been carried beyond the regular stop at the curb. In view of the court's comment at page 282, that "the safe and sane point for the stoppage of a motor bus, whether the stop be regular or irregular, is at the curb, where there can be no danger to the passenger who is alighting from vehicular traffic," a rule of reason and conduct is suggested for future guidance. It can be rightfully assumed that the same position be taken upon picking up passengers. There is, however, a further point of difference. A bus can discharge a passenger at a particular place, but a carrier can not control the action of one on a public street where he has a lawful right to be, or require him to approach a waiting bus by a particular course or direction. In this controversy, the bus was parked at the curb without the bounds of the traveled portion of Lexington Avenue. One could have entered it without incurring the risk of entering upon the traveled thoroughfare. This being true, it must be conceded as an established fact that the bus was standing in a safe place.

The same court in **Reining v Traction Co.**, 107 Oh St 528, 140 NE 84, considered the question if a carrier was bound to warn one alighting from a street car of traffic dangers. The court answered no, which is in accord with the majority holdings. Keeping in mind what we have previously stated, it appeals to us with greater force that a street car company or ▌ bus carrier is not bound to warn those seeking transportation of the presence of ordinary street hazards which are well known and apparent to all who will give heed.

As this is not a case of stopping on signal, we think the query may be answered by determination of just when the relationship of passenger and carrier comes into existence. By the appellant's argument, it may be reasoned logically that one becomes a passenger just as soon as the carrier's agent sees one approaching his bus, irrespective of whether, or not that person should be starting to cross a busy street, congested with traffic. For if one entertains the thought of becoming a passenger and the agent sees him, the carrier becomes an insurer of his safety. In other words, one's intention and the agent's ability to see is sufficient to create a contract of conveyance with all the encumbent duties of a high degree of care cast upon the carrier, and a relaxation from the exercise of ordinary care on the part of the one intending to become a passenger. And further still, the intending passenger might, upon reaching the conveyance, change his mind and not board the vehicle.

It is our judgment that in cases where busses are involved that one intending to become a passenger must do ▌ some physical act in respect to boarding the vehicle, like an attempt to enter the vehicle or that intention be communicated to the carrier's agent in charge, when the physical chance of boarding may be accomplished with safety to both contracting parties.

The case of **Canchez v Pacific Auto Stages**, 116 Cal. App. 392, 2 P. (2) 845, is most interesting in that it points out that after one has purchased a ticket, a hiatus may occur in carrier passenger relationship. The court at page 396 held it to be the rule, that:

"The relation is in force when one, intending in good faith to become a passenger, goes to the place designated as the site of departure at the appropriate time and the carrier takes some action indicating acceptance of the passenger as a traveler."

In **Moss v Mason City & Clear Lake Rd. Co.**, 217 Iowa 354, 251 NW 627, a woman sought to cross a street and board a street car. It was concluded:

"A person while walking in the street toward a street car for the purpose of entering the car for passage thereon cannot be deemed a 'passenger,' and the carrier operating the car owes such person that degree of care only, which it owes to all people in the street, to-wit, ordinary care."

It is of interest that the Iowa court in this case adopts with approval its prior reason appearing in **Chesley v Waterloo Rd. Co.** found in 188 Iowa 1004, 176 NW 961, 12 A.L.R. 1366, which was likewise employed in **Reining v Traction & Light Co.**, supra, at page 533.

Klingensmith v West Penn. Ry. Co., 279 Pa. 336, 123 A. 787, states a like tenet. It is held therein, that:

"The condition and use of the road is, as a rule, beyond the control of the street railway company, and, consequently, it is not held liable for the safety of persons using the street for the purpose of entering or leaving a trolley car so long as the acts of its employees do not in any way contribute to the injury."

The reason advanced by the court in Duchemin v Boston Elev. Ry. Co., 186 Mass. 353, 71 NE 780, 66 L.R.A. 980, states with precision at page 356 the thought we entertain:

"It is apparent that a person in such a situation is not in fact a passenger. He has not entered upon the premises of the carrier, as has a person who has gone upon the grounds of a steam railroad for the purpose of taking a train. He is upon a public highway where he has a clear right to be independently of his intention to become a passenger. He has as yet done nothing which enables the carrier to demand of him a fare, or in any way to control his actions. He is at liberty to advance or recede. He may change his mind and not become a passenger. Certainly the carrier owes him no other duty to keep the pavement smooth or the street clear of obstructions to his progress than it owes to all other travelers on the highway. It is under no obligation to see that he is not assaulted, or run into by vehicles or travelers, or not insulted or otherwise mistreated by other persons present.

"Nor do we think that as to such a person, who has not yet reached the car, there is any other duty as to the car itself than that which the carrier owes to all persons lawfully upon the street. There is no sound distinction as to the diligence due from the carrier between the case of a person who has just dismounted from a street car and that of one who is about to take the car but has not yet reached it."

The subject may be further found exhaustively treated in the excellent note appended to report of Villa v United Electric Ry. Co., 51 R. I. 384, 155 A. 366, 75 A.L.R. 282. See page 285 thereof.

Finding no error in the trial court's action, the judgment must be and is affirmed.

Judgment affirmed.

LEMERT, PJ, and MONTGOMERY, J, concur.