Preston DUNCAN, as Administrator of
the Estate of Duane Duncan,
Deceased, Appellant,

v.

The CITY OF CEDAR RAPIDS,
Iowa, and Kim William
Klima, Appellees.

No. 95–1392.

Supreme Court of Iowa.

Jan. 22, 1997.

As Amended on Denial of Rehearing
March 26, 1997.

Gerald J. Kucera of the Tom Riley Law Firm, P.C., Cedar Rapids, for appellant.

William G. Nicholson and Crystal L. Usher of White & Johnson, P.C., Cedar Rapids, for appellees.

TERNUS, Justice.

Duane Duncan was severely injured after being hit by a bus owned by appellee, City of Cedar Rapids, and driven by appellee, Kim Klima. Duncan's conservator filed this action against the City and Klima, seeking damages for Duncan's injuries. After Dun-

can died, the administrator of his estate was substituted as plaintiff. The jury returned a verdict finding Klima not at fault and the district court entered judgment against the estate. The estate appeals, claiming the district court erred in admitting certain items of evidence and in refusing the estate's requested jury instructions. We affirm.

## I. *Background Facts and Proceedings.*

By all accounts, Duane Duncan's adult life was troubled. Duncan was an alcoholic who was arrested on numerous occasions for drunk and disorderly behavior. His abuse of alcohol generated a lengthy history of injuries for which he sought emergency medical treatment some 108 times between May 1988, and March 1992. Duncan also suffered from epileptic seizures and took Dilantin and Phenobarbital for their control.

On March 3, 1992, Duncan was on the sidewalk abutting 12th Avenue in Cedar Rapids, when a city bus, driven by Kim Klima, passed. As the bus swung wide to turn right onto 3rd Street S.E., Duncan went into the street. Klima continued to drive the bus around the corner and as the bus entered the curb lane on 3rd Street S.E., it struck Duncan just in front of the right rear tires. The parties disputed whether Duncan was struck when attempting to flag down the bus or whether he fell into the bus due to drunkenness or a seizure.

Duncan was severely injured. During emergency treatment at a local hospital, the hospital staff took blood samples which were later tested for the presence of alcohol and drugs. This testing showed a blood-alcohol content of .185 and sub-therapeutic levels of Dilantin and Phenobarbital. Duncan was paralyzed after the accident and required constant nursing care.

This action was then filed, alleging Klima was negligent in his operation of the city bus. Over the estate's objections at trial, the blood test results and the testimony and medical records showing Duncan's history of abusing alcohol and his seizure condition were admitted. The estate requested instructions defining the duty of care as that owed by a common carrier to a passenger and an instruction defining a standard of care based on the City's training manuals and timetables. The court refused to give the requested instructions.

The jury returned a verdict finding, in response to a special interrogatory, that Klima was not negligent in his operation of the bus. The district court entered judgment in favor of the City and Klima. We refer to these defendants jointly as "the City" in the remainder of this opinion, unless the context indicates otherwise.

Following unsuccessful post-trial motions, the estate filed this appeal. On appeal, the estate complains of the court's admission of the tests showing the levels of alcohol, Dilantin and Phenobarbital in Duncan's blood at the time of the accident because the foundation for this evidence was deficient. The estate also claims the court erred in admitting evidence of Duncan's history of alcohol use and seizures on the basis this evidence was irrelevant to any issue in the case or, alternatively, that any relevancy was outweighed by unfair prejudice. Finally, the estate argues the trial court erred in failing to give its requested instructions based on Duncan's status as a passenger and based on standards of care contained in the City's bus training manuals and timetables.

## II. *Admission of Blood Tests.*

A party seeking the admission of blood test results must lay a proper foundation by showing (1) the specimen was taken by an authorized person, (2) that person used sterile equipment, (3) the specimen was properly labeled and preserved, (4) the specimen was properly transported and stored, and (5) the identity of the persons processing the blood sample. *Sechler v. State,* 340 N.W.2d 759, 764 (Iowa 1983). The first four categories of information ensure that the results of the test are reliable. *See Henkel v. Heri,* 274 N.W.2d 317, 321–22 (Iowa 1979); 11 Patrick D. Kelly, *Blashfield Automobile Law & Practice* §§ 432.1, .2, at 696–97, 698–99 (1977). The identity of the persons processing the specimen are required so the opposing party has the opportunity to cross-examine the witnesses with respect to the care

and procedure used in the testing of the sample. *Sechler,* 340 N.W.2d at 764.

■ The trial judge decides whether an adequate foundation has been laid. *Id.* at 765. In considering this question, the court's focus is on the reliability of the procedures. *Henkel,* 274 N.W.2d at 321. The court must consider the circumstances surrounding the custody of the specimen and the likelihood that someone would tamper or contaminate the specimen. *Sechler,* 340 N.W.2d at 765. An adequate foundation is laid when the proponent of the evidence shows it is reasonably probable no tampering, contamination or substitution occurred. *Id.* It is not necessary to negate any possibility of such an occurrence. *Id.*

■ The estate challenges the foundation made by the City here for three reasons: (1) the doctor who took the blood sample had no present recollection of doing so; (2) the City did not disclose the identity of the persons processing the blood in a timely manner; and (3) the personnel who took the vials of blood from the emergency room to the lab were not identified and did not testify. The estate argues these deficiencies in foundation undermined the accuracy of the tests and therefore, the test results should not have been admitted. We review the court's decision to admit this evidence for a clear abuse of discretion. *Id.* at 764.

■ A. *Recollection of physician drawing blood sample.* Dr. Robert Handler testified that he was working in the hospital's trauma center on the morning of Duncan's accident. Handler had no independent recollection of drawing blood from Duncan at that time. The medical records, however, contained nursing notes specifically stating Handler drew blood from the femoral artery. Handler testified only physicians could draw femoral blood in the trauma center and he was the only physician in the trauma center when Duncan was treated there. Handler concluded from the records and the hospital's customary practice that he took the blood sample. This evidence is sufficient to show an authorized person drew the blood, thereby satisfying the first foundational requirement for admission of the test results.

B. *Disclosure of witnesses.* Less than thirty days before trial, the City amended its witness list to disclose two new witnesses, Jim Rogers and Christine Voges, medical technologists in the hospital where Duncan's blood was tested. The City indicated in its amendment that these witnesses would testify to the foundation for the blood test results. The estate complains that this disclosure did not comply with Iowa Rule of Civil Procedure 125(c) which requires disclosure of expert witness information "as soon as practicable, but in no event less than thirty days prior to the beginning of trial."

■ The estate's argument is unfounded because rule 125(c) does not apply to these witnesses. Rule 125 applies to the discovery of facts known and mental impressions and opinions held by an expert and "acquired or developed in anticipation of litigation or for trial." Iowa R. Civ. P. 125(a). We held in *Day v. McIlrath,* 469 N.W.2d 676 (Iowa 1991), that the disclosure procedures of rule 125 did not apply to a treating physician with the possible exception of a treating physician who assumes a role in the litigation analogous to a retained expert. *Day,* 469 N.W.2d at 677; *see Cox v. Jones,* 470 N.W.2d 23, 25 (Iowa 1991) (treating physician who will give testimony on standards of care and causation is an expert subject to disclosure under rule 125). The witnesses here were medical technologists employed by the hospital at which Duncan was treated. They were being called to testify to the procedures employed by the hospital generally in the testing of blood, and to the specific testing for alcohol done in this case. This knowledge was not "acquired or developed in anticipation of litigation or for trial." Therefore, rule 125 does not apply.

The estate points out, however, that a third witness, Marg Cutshall, was not identified until after trial had commenced. It argues her testimony should not have been allowed because Iowa Rule of Civil Procedure 122(d) requires a party to supplement its interrogatory answers with the identity of any person having knowledge of discoverable matters or expected to be called as a witness at trial. The purpose of this rule is to avoid surprise and to ensure that the issues are defined before trial. *White v. Citizens Nat'l*

*Bank,* 262 N.W.2d 812, 816 (Iowa 1978). In this way, the parties can prepare for the actual issues they will confront at trial. *Id.*

█ Cutshall was the medical technologist who performed tests for the presence of therapeutic drugs in Duncan's blood. The trial court allowed her testimony because, as a person involved in Duncan's care and treatment, Cutshall's identity was probably more accessible to the estate than to the City. Moreover, because the estate planned to challenge the foundation for the blood tests, the court believed the estate could not close its eyes to relevant information accessible to it and then claim surprise when the City attempted to lay the foundation upon which the estate insisted. The court apparently believed the City's late disclosure of this witness did not prejudice the estate or that if any prejudice resulted, it was due to the estate's decision to willfully ignore relevant information accessible to it on an issue it was raising. We do not think the trial court abused its discretion in allowing this evidence for these reasons.

█ C. *Identification of person transporting specimen.* The estate claims the blood test results were inadmissible because the City was unable to identify the person who carried the blood vial from the trauma center to the lab. We do not believe this omission is fatal.

The manager of the hospital's lab testified to the hospital's system for obtaining, labeling, transporting and testing blood samples. Duncan's name and hospital number on the test results documents matched the name and number appearing on Duncan's other medical records. The dates and times of the tests were consistent with the date and time Duncan was in the emergency room. Finally, the results of the tests were compatible with other evidence in the record showing Duncan's abuse of alcohol and use of seizure medication. Focusing on the reliability of the tests, we conclude the trial court did not abuse its discretion in holding an adequate foundation was laid despite the hospital's inability to identify the particular lab assistant who transported the blood samples to the lab.

III. *Admission of Evidence of Alcoholism and Seizure Condition.*

Duncan's use and abuse of alcohol was introduced into evidence in two ways. In its cross-examination of the two police officers who investigated the accident, the City elicited testimony that the police had had contact with Duncan over the years due to his drinking and disturbances that resulted. One officer testified he had arrested Duncan for such disturbances; he characterized these arrests as "small minor arrests." Duncan's history of alcoholism and seizures was also established by the introduction of Duncan's prior medical records which showed that he had presented himself at the emergency room 108 times in the five years prior to the accident for treatment of convulsions, seizures, intoxication and associated conditions and injuries.

The estate objected to this testimony and these exhibits on the basis that (1) this evidence was irrelevant, and (2) any relevancy was outweighed by the prejudicial effect of the evidence. *See* Iowa Rs. Evid. 402 ("Evidence which is not relevant is not admissible."), 403 (relevant evidence may be excluded if "probative value is substantially outweighed by the danger of unfair prejudice"). We review the trial court's admission of this evidence for a clear abuse of discretion. *Shawhan v. Polk County,* 420 N.W.2d 808, 809 (Iowa 1988).

The estate relies on our decision in *Shawhan* as support for its position that the trial court abused its discretion. In *Shawhan,* the plaintiff sued the county for severe injuries she sustained in an automobile accident on a rural county road. *Id.* The trial court admitted evidence of the plaintiff's past drug usage even though there was no evidence suggesting that the plaintiff had used drugs at the time of the accident or that her past drug use contributed to the accident. *Id.* The county claimed the evidence was relevant to the plaintiff's life expectancy. *Id.* On appeal, we held that even if the plaintiff's drug usage was relevant, the trial court abused its discretion in admitting the evidence because it had a high potential for unfair prejudice. *Id.* at 810. We observed the jury would likely

conclude from this evidence that the plaintiff was a bad person and thus entitled to recover less damages. *Id.* Nevertheless, we did not reverse because any error in admitting this evidence did not prejudice the plaintiff's substantial rights. *Id.* We reasoned that because the jury had found the county was not negligent and because the erroneously-admitted evidence went to the issue of damages, no prejudice resulted. *Id.* at 810–11.

The present case differs from *Shawhan* in that the alcoholism/seizure evidence was offered on the issue of liability as well as damages. Therefore, the City cannot rely on our conclusion in *Shawhan* that any prejudice from admission of evidence bearing only on damages is not reversible error when the jury finds against the plaintiff on liability and, consequently, never considers damages. Notwithstanding this distinction, we find no reversible error here.

■ The relevancy of the evidence introduced in the present case was much greater than in *Shawhan.* The City's theory was the accident happened when Duncan fell into the path of the bus due to his intoxication or a possible seizure. At least one witness testified that Duncan fell into the bus. In addition, the blood test results showed a high level of alcohol and sub-therapeutic levels of seizure medication. Consequently, any evidence tending to prove Duncan was intoxicated or suffered a seizure at the time of the accident was relevant to liability.

Ordinarily, evidence of other instances of intoxication or seizures would not be admissible, however, to prove Duncan was intoxicated or had a seizure at the time of the accident. *See* Iowa R. Evid. 404(b) ("Evidence of other ... acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith."); *State v. Roth,* 403 N.W.2d 762, 765 (Iowa 1987) (evidence of prior murder conviction inadmissible under rule 404(b)). If this were the only purpose for the City's evidence, we would reverse. But the challenged evidence was relevant for another reason. The estate attacked the most direct evidence of Duncan's condition at the time of the accident— the blood tests done by the hospital. By questioning the reliability and accuracy of

those test results, the estate opened the door to corroborative evidence that the results of those tests were consistent with Duncan's customary state of inebriation and consequent loss of control and with his history of failing to properly take his seizure medication. *See* Iowa R. Evid. 404(b) (evidence of other acts may be admissible to prove absence of mistake); *Clarey v. K–Prods., Inc.,* 514 N.W.2d 900, 903 (Iowa 1994) (allowing evidence of prior instances of harassment in wrongful termination case under exception contained in rule 404(b) because the evidence tended to show a pattern of conduct); *State v. Taylor,* 490 N.W.2d 536, 538 (Iowa 1992) (allowing evidence that defendant had not filed returns in prior years at trial on willful-failure-to-file-income-tax-returns charge because the evidence showed "intent, knowledge, and an absence of mistake" and so was admissible under rule 404(b) exception); *cf. State v. Storrs,* 351 N.W.2d 520, 521 (Iowa 1984) (finding no abuse of discretion under common law for allowing evidence of prior overdrafts by defendant in theft-based-on-bad-check case, because evidence showed "knowledge, intent, and absence of mistake"). Thus, the probative value of this evidence was sufficient to outweigh any unfair prejudice. Under these unique circumstances, we think the trial court did not abuse its discretion in admitting evidence of Duncan's prior abuse of alcohol and his seizure condition.

## IV. *Instructions on Standard of Care.*

■ A. *Standard of review.* We review for correction of errors of law. Iowa R.App. P. 4; *Beyond the Garden Gate, Inc. v. Northstar Freeze–Dry Mfg., Inc.,* 526 N.W.2d 305, 308 (Iowa 1995). "Parties to lawsuits are entitled to have their legal theories submitted to a jury if they are supported by the pleadings and substantial evidence in the record." *Sonnek v. Warren,* 522 N.W.2d 45, 47 (Iowa 1994). When weighing the sufficiency of the evidence to support a requested instruction, we view the evidence in a light most favorable to the party seeking the instruction. *Id.*

■ B. *Instructions based on Duncan's status as a passenger.* Common carriers have a duty "to protect passengers as far as

human care and foresight will go." *Burton v. Des Moines Metro. Transit Auth.,* 530 N.W.2d 696, 699 (Iowa 1995). The carrier must "protect passengers from dangers which may reasonably and naturally be anticipated." *Id.* We have characterized these obligations as a "high duty." *Moss v. Mason City & Clear Lake R.R.,* 217 Iowa 354, 357, 251 N.W. 627, 628 (1933).

The estate requested instructions on a common carrier's duty, claiming Duncan was a passenger when he was injured. The trial court refused to give the requested instructions. On appeal, the estate argues the court erred because substantial evidence exists in the record that Duncan intended to board the bus and that Klima knew of that intent. Therefore, the estate concludes, Duncan was a "passenger" and instructions defining the duty of care owed to a passenger should have been submitted to the jury. The City responds that mere intent to board a public conveyance is not sufficient to confer passenger status. We think our prior case law shows the City is correct.

In *Moss,* a woman was struck by a car while she was crossing the street to meet a waiting streetcar. 217 Iowa at 355, 251 N.W. at 627. There was no dispute the woman intended to board the bus and no dispute that the bus had stopped to allow her to board. *Id.* at 355, 251 N.W. at 627–28. We held the woman was not a passenger under these circumstances; "[s]he was only a traveler upon the public highway to whom [the city] owed only such ordinary care as it owed to every other traveler upon such highway." *Id.* at 357–58, 251 N.W. at 629. We reasoned, "Some point must be reached when this [passenger-common carrier] relationship ends, and it must be such a point that is free from all speculation and uncertainty." *Id.* at 358, 251 N.W. at 628–29.

We recently applied the same principles to the opposite situation, where the plaintiff had exited a bus. In *Burton,* a child had alighted from the bus and was struck by a car as he attempted to cross the street. 530 N.W.2d at 698. We held "[t]he responsibility of the street car operator or bus driver terminates when the passenger is no longer on the vehicle." *Id.* at 702.

The rule to be gleaned from these cases is that until one has actually begun to board the public conveyance, one is not a passenger. Similarly, once one has safely alighted from the conveyance, one is no longer a passenger. One's intent does not alter these rules. Nor do the rules vary simply because one is struck by the public conveyance, as was the case here, rather than by a private vehicle.

Applying these principles to the facts of the present case, we conclude the trial court did not err in refusing the estate's requested instructions; the evidence cannot support a jury finding that Duncan was a passenger. He was not on the bus nor was he boarding or exiting the bus. Duncan's mere intent to become a passenger, even when recognized by the driver of the bus, cannot support a finding that Duncan was a passenger.

C. *Instruction based on city bus manuals and timetables.* The City published training manuals for its bus drivers and timetables for the public. Duncan submitted an instruction that violation of certain requirements contained in those documents "is negligence": (1) "that drivers observe passengers' behaviors, including nonverbal communication," (2) "that a bus driver never pass a passenger up," (3) "that a driver stop at all intersections, if required by a passenger or a would be passenger, along his or her route," (4) "that a driver give extra and additional attention to the handicapped," and (5) "that a driver prevent, in all ways possible, accidents with pedestrians." When the court refused to give this instruction, Duncan took exception, requesting that the last sentence of his original instruction be amended to state "Violation of any of these requirements is evidence of negligence."

Duncan claims he was entitled to this instruction because evidence of applicable safety codes and customs is relevant to whether the bus driver exercised reasonable care. *See generally* 57A Am. Jur. 2d *Negligence* § 187, at 239 (1989). The first barrier to Duncan's request is the fact the manual and timetable, in large part, do not set forth the standards contained in his requested in-

struction. The requested instruction states a driver is "require[d] [to] stop at *all* intersections, if required by a passenger or would be passenger, along his or her route." (Emphasis added.) In contrast, the timetable merely states "[b]uses will stop at any intersection along their routes." The requested instruction also states a driver is required to "give extra and additional attention to the handicapped" and "prevent in all ways possible accidents with pedestrians." These directives are not contained in the timetable or manual. To the extent this instruction lacked evidentiary support, the trial court correctly refused to submit it to the jury. *See Coker v. Abell–Howe Co.*, 491 N.W.2d 143, 150 (Iowa 1992) ("There must be substantial evidence in the record to support the instruction submitted.").

■ Although the manual did contain statements supporting Duncan's remaining claims that drivers were required to "observe passengers' behaviors" and "never pass a passenger up," we have already determined there was insufficient evidence to support Duncan's claim that he was a passenger. Therefore, the trial court did not err in refusing to give this instruction. *See Morgan v. Perlowski*, 508 N.W.2d 724, 730 (Iowa 1993) (holding instruction based on premises liability properly refused where theory of premises liability was not applicable under evidence produced); *Porter v. Iowa Power & Light Co.*, 217 N.W.2d 221, 234–35 (Iowa 1974) ("since we have found such duty did not exist under the evidence in this case, the court did not err in refusing the [requested instruction].").

We have considered all of the estate's arguments, even if not specifically discussed, and finding no error requiring reversal, we affirm.

**AFFIRMED.**

All justices concur except CARTER, J., who takes no part.