**STATE of Iowa, Appellee,**

v.

**James A. SINCLAIR, Appellant.**

No. 97–752.

Supreme Court of Iowa.

July 1, 1998.

Kermit L. Dunahoo of Dunahoo Law Firm, Des Moines, for appellant.

Thomas J. Miller, Attorney General, Robert P. Ewald, Assistant Attorney General, John P. Sarcone, County Attorney, and Teresa Vens, Assistant County Attorney, for appellee.

Considered by HARRIS, P.J., and LARSON, CARTER, NEUMAN, and TERNUS, JJ.

CARTER, Justice.

James Sinclair challenges his conviction and sentence for operating while intoxicated (OWI), first-offense, in violation of Iowa Code section 321J.2 (1995). He alleges that the trial judge erred in admitting evidence of phone calls made by defendant to his attorney after his arrest. He also claims the court made numerous sentencing errors. After reviewing the record and the arguments presented, we affirm defendant's conviction but vacate his sentence and remand for resentencing.

On July 19, 1996, around 11:50 p.m., an Urbandale police officer clocked defendant's car at forty-nine miles per hour in a thirty-mile-per-hour zone. After following defendant for a few blocks and observing the car weaving, the officer stopped the vehicle in the 5700 block of Merle Hay Road. At defendant's trial, the officer testified that, in his initial observation of the defendant, he noticed that defendant's eyes were bloodshot and watery and that his breath smelled of alcohol. He asked the defendant three times if he had had anything to drink during the evening. Each time the defendant replied that he had not. The officer testified that when the defendant stepped out of the car it appeared that he had to place his left hand on the vehicle to maintain his balance. Defendant twice refused the officer's request to perform field sobriety tests. After he refused the second time, defendant was placed under arrest.

At the station house, the officer read the "Implied Consent Advisory" to the defendant. Following that, the defendant made seven phone calls. During trial the State never revealed to whom these calls were made. After the defendant placed these calls, he told the officer that he would not make a decision about whether to take a breath test until he spoke with a person who was coming to the station. After this person arrived, around 1:50 a.m., defendant told the officer that he would only take the breath test if he could examine the certification of the intoxilyzer. The officer informed the defendant that this information is kept at the criminalistics laboratory and that there was no way to get the information that evening.

The defendant informed the officer that he would not take the breath test.

Two months before trial, defendant filed a motion in limine, requesting the court to exclude evidence pertaining to the telephone calls he made at the police station. The judge ruled that this motion would be heard by the court prior to trial. However, when the trial commenced, no ruling had been made and none was requested.

At trial, the following record was made:

Q. And what happened after you gave the Implied Consent Advisory?

OFFICER GOODMAN: I offered him phone calls to whoever he wanted to call.

Q. And how many phone calls did the defendant make?

MR. ROUSE: Objection, Your Honor. May I approach?

THE COURT: All right. (Discussion was held off the record at the bench.)

MR. ROUSE: Your Honor, I object to this line of questioning on the basis of relevance.

THE COURT: Overruled. Part of the transaction. You may answer, if you can remember.

Q. How many phone calls did the defendant make? A. I believe he made a total of seven.

Q. And did he eventually talk with someone on the phone? A. Yes, he did. He spoke with somebody who called the station.

Q. What happened after he spoke with someone on the phone? A. After he spoke with somebody on the phone I asked him if he was going to make a decision on whether or not he would take the breath test at the station. At that time he said he would not take the test or he did not say—he didn't say that. He said I will not make a decision on whether to take the test until I'm able to speak to that person who is coming to the station.

Q. Now, are there any time constraints for you in this process? A. As far as time constraint, we have to ask for the breath sample within two hours of the arrest.

Q. And do you recall what time it was when the defendant said he would wait until someone came to the station? A. I believe it was around one a.m. Approximately one a.m.

Q. And did someone eventually arrive at the station? A. Yes, somebody did come to the station.

MR. ROUSE: Objection, Your Honor. Now I would like to take up a matter outside the presence of the jury.

After the jury was excused, the defendant's attorney objected to the testimony on the basis that its purpose was clearly to let the jury know that the defendant had contacted an attorney. The judge overruled this objection. After the jury returned to the room, testimony continued as follows:

THE COURT: All right. You may proceed.

Q. What time did the person arrive at the station that the defendant was waiting for? A. I believe that was approximately 1:50 a.m.

Q. And was the defendant allowed to personally visit with this person? A. Yes, he was.

Q. What happened next? A. After the defendant consulted with that person I asked him if he was going to take the breath test.

Q. His response? A. His response was he would take the test contingent upon seeing the certification of the Intoxilyzer that was being used.

## I. *Evidence of Phone Calls.*

■ Defendant argues that the evidence that he made numerous phone calls and had a visitor at the police station after his arrest was irrelevant, and any probative value was substantially outweighed by the danger of unfair prejudice. Therefore, he contends that his conviction should be overturned.

■ This court reviews the trial court's decision on the relevancy of evidence for an abuse of discretion. *Duncan v. City of Cedar Rapids*, 560 N.W.2d 320, 323 (Iowa 1997). An abuse of discretion is found only when the trial court exercises its discretion on grounds or for reasons clearly untenable or to an extent clearly unreasonable. *State v. Privitt*, 571 N.W.2d 484, 486 (Iowa 1997).

■ Iowa Code section 321J.16 provides that proof of a defendant's refusal to submit to a chemical test is admissible in any action against that defendant arising out of section 321J.2. "Relevant evidence" is defined as evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. *Iowa Mut. Ins. Co. v. McCarthy*, 572 N.W.2d 537, 544 (Iowa 1997). We find that the evidence regarding defendant's phone calls and visitor while at the police station was relevant to show the circumstances surrounding his refusal to submit to a breath test. Furthermore, there was little danger of unfair prejudice in the admission of this evidence. The identities of the recipients of the phone calls and defendant's visitor were not revealed until closing arguments at which time it was *defendant's* attorney who informed the jury that the visitor was his attorney. Therefore, we uphold defendant's conviction of first-offense OWI.

## II. *Consideration of Unprosecuted Offenses in Sentencing.*

■ Next, defendant argues that the trial judge impermissibly considered other unprosecuted offenses when he imposed the defendant's sentence. At the sentencing hearing, the judge made the following statement:

> [The defendant] has been arrested on four occasions for Operating a Motor Vehicle While Intoxicated and that those three cases were dismissed by the County Attorney for one reason or another, and that he shouldn't be held responsible for those since he was not proven guilty beyond a reasonable doubt in front of a jury or a Judge, and that shouldn't be considered in the sentence. . . . .
>
> . . . .
>
> . . . I have to under the law sentence you as a first offense because that's what it was, and [ ] you weren't convicted on the other three. But I believe that I can take into consideration that there was a problem because you were arrested for some type of alcohol-related incident and that for some reason maybe they couldn't prove you guilty beyond a reasonable doubt and that's why those were dismissed, and the Court has to take that into consideration.

That this is a first, but you've had three prior arrests. .

The judge then sentenced defendant to thirty days in the Polk County jail. The sentencing order provided that, in lieu of the thirty days in jail, Sinclair could opt to enter a qualified alcohol treatment center for evaluation and treatment for a thirty-day period. The judge imposed a $1000 fine and a requirement that defendant perform 100 hours of pro bono legal work for indigent parties for his community service. Finally, the judge imposed a two-year probation period and suspended defendant's driver's license for 360 days.

Both the State and defendant agree that a sentencing court may not consider or rely on charges of unprosecuted offenses unless they are admitted by the defendant or otherwise proved. *State v. Black*, 324 N.W.2d 313, 315 (Iowa 1982). Here, there is no evidence that indicates the charges were admitted by Sinclair or otherwise proved. Instead, the State argues that the judge did not consider the unproven offenses. We are convinced, however, that the judge's statements on the record conclusively show that he did consider the unproven offenses in sentencing the defendant. Because of this consideration of improper factors, we vacate the sentence and remand the case for resentencing.

## III. *Whether Portions of the Sentence Were Illegally Imposed.*

Defendant contends that the court's sentence was illegal in requiring him to attend an alcohol treatment center and in suspending his driver's license. We disagree with the first contention ·and agree with the second.

■ Under the sentencing order, the defendant did not have to accept the conditions of probation if he agreed to serve a thirty-day jail sentence. To avoid the jail sentence, he had to agree to the terms of probation. Although the court did not identify a statute in imposing the conditions of probation, the relevant statute is Iowa Code section 907.3(3), which provides:

> By record entry at the time of or after sentencing, the court may suspend the sentence and place the defendant on probation upon such terms and conditions as it may

require including commitment to an alternate jail facility or a community correctional residential treatment facility for a specific number of days to be followed by a term of probation. . . .

The judge did not act beyond his authority in requiring defendant to attend a residential treatment facility.

■ If the sentencing order is taken literally, defendant is correct in urging that the judge was without authority to suspend his driver's license. Absent a statutory provision for court-ordered revocation, that authority lies with the Iowa Department of Transportation. *See* Iowa Code § 321J.4(1). The court could, however, impose as a condition of probation a prohibition against defendant driving for a specified number of days irrespective of his status as a licensed operator. That may have been the intent of the sentencing order. This matter may be clarified at the time of resentencing.

### IV. *Whether the Judge Was Required to Recuse Himself.*

■ Defendant contends that the judge should have recused himself after receiving phone calls from concerned citizens regarding this case. During the sentencing hearing the judge stated:

Mr. Sinclair, since this trial and after the publicity that was received during the trial and afterwards, I've received approximately six calls from citizens of this state, out of Des Moines and also in Polk County, asking that I give you the maximum sentence of one year in jail and a thousand dollar fine. To me that [ ] would be an easy sentence for me to give to you and I would probably be a hero of this state in respect to those people that are so against drunk driving that they would now say that I was doing what I was supposed to do.

However, the Court has to look at all the facts and circumstances in this case, and I know that if I did the maximum for everything, that that would probably really hurt you in your livelihood as an attorney and as a person, and that the bar association would probably suspend your license and give you a year suspension, and whether they would run it concurrent with the year in jail or not I don't know.

. . . .

[N]o matter how much the public is screaming and how much public clamor there is, I still have an oath and an obligation under this law to administer justice to you.

■ This court has held that actual prejudice must be shown before a recusal is necessary. *McKinley v. Iowa Dist. Ct.*, 542 N.W.2d 822, 827 (Iowa 1996). The test is whether a reasonable person would question the judge's impartiality. *Id.*; *State v. Smith*, 282 N.W.2d 138, 142 (Iowa 1979). The defendant did not meet his burden of showing actual prejudice. The judge acknowledged the public outcry over this case to make it clear that he was not influenced by popular opinion. There were no grounds for recusal.

We affirm defendant's conviction but vacate the sentence imposed and remand for resentencing consistent with the determinations made in this opinion.

**AFFIRMED IN PART, VACATED IN PART, AND REMANDED FOR RESENTENCING.**