W. E. CHESLEY, Administrator, Appellant, v. WATERLOO, CEDAR FALLS & NORTHERN RAILROAD COMPANY, Appellee.

**NEGLIGENCE:** Street Car Passenger Alighting at Unusual Place.
1  Negligence *per se* may not be predicated on the act of a street railway company in permitting a mature passenger, in full possession of his faculties, voluntarily to alight at a reasonably safe point other than at street intersections—the usual stopping point.

**CARRIERS:** Termination of Relation of Carrier and Passenger.
2  The relationship of passenger and carrier ceases instantly when a street car passenger, mature and in full possession of his faculties, voluntarily alights from the car at a point in the street other than the usual stopping place.

*Appeal from Black Hawk District Court.*—H. B. BOIES, Judge.

APRIL 13, 1920.

PLAINTIFF's intestate, after alighting from a car, was struck by a passing automobile, and received injuries from which he died. This action is to recover for such injuries. The district court sustained a motion for a directed verdict. Plaintiff appeals.—*Affirmed.*

*Williams & Clark,* for appellant.

*Pickett, Swisher & Farwell,* for appellee.

GAYNOR, J.—The facts on which the liability of the defendant company is predicated are these: Plaintiff's intestate was a passenger on one of the defendant's cars on East Fourth street. The point to which he desired to be carried is not shown. The car in which he was riding stopped at a point about midway between Sycamore and Lafayette Streets. The further passage of the car was interrupted by another car, standing on the same track ahead of it. This was not the place designated by the company for taking on or letting off passengers. However, passengers were frequently received and discharged at this point. It was the rule and custom of the company to stop at the near crossing, for the purpose of receiving and discharging passengers, but passengers desiring to enter at this point were frequently received, and passengers were frequently permitted to alight at this point, when they signaled a desire to do so. At this particular time, the car on which deceased was riding stopped, a few seconds, at this point, for the reason aforesaid. The deceased arose from his seat and proceeded to the exit, the door was thrown open, and he alighted upon the street. After he had reached the street, and was in the act of crossing to the curbing, and after he had made a step or two in that direction (the exact number is in dispute), he was struck by an automobile, passing along the street, and was injured, and from these injuries he died. His administrator bases his right to recover on these facts. His claim is that the defendant company was negligent in permitting the deceased to alight at this point. This claim is based upon the fact that this was a very congested part of the city, and auto cars frequently passed this

1. NEGLIGENCE: street car passenger alighting at unusual place.

point, thereby imperiling the safety of persons attempting to pass from the car to the curbing. There are two tracks on this line. Lafayette Street crosses East Fourth Street. There are tracks on Lafayette Street, but these do not cross Fourth Street. When they reach East Fourth Street, they circle onto Fourth Street, and thereafter proceed upon Fourth. The switches that carry the cars from Lafayette Street onto Fourth Street extend, and reach the car tracks on Fourth Street, a considerable distance from Lafayette Street on Fourth, and cars passing on Fourth Street are required to stop, necessarily, in order to allow these Lafayette cars to pass onto the Fourth Street tracks.

All negligence is bottomed on the idea of a duty neglected, and it becomes important to ascertain the exact relationship existing between the deceased and the street car company, at the time the injury occurred, in order to say, in a legal way, what duty the defendant company owed the deceased, at and immediately prior to his injury.

There is nothing in this record to show deceased's objective point, or what he intended as his destination. He did not communicate this to the one in charge of the car.

2. CARRIERS: termination of relation of carrier and passenger.

When the car reached this point, he voluntarily arose, indicated a desire to leave the car, and was permitted to do so. The door was opened, and he alighted. It is not claimed that there was anything defective in the car, and the evidence does not show any defect in the car that in any way contributed to his injury. The place at which he alighted was not, in and of itself, dangerous or unsafe. It was a place open for public travel, and, in the absence of any showing, we must suppose it was in a reasonably safe condition for the public's use. While the defendant was on the car, while he was a passenger, the company owed him the high duty which the law imposes upon common carriers. When that relationship ceased, this

high duty ended. When he passed from the car onto the street, his relationship with the company ended, and he became as any other traveler upon the public highway, subject to the perils of such travel. What legal duty, then, did the company violate or neglect that contributed to or caused the injury that resulted in his death? It received him as a passenger, and carried him in safety to a point where he signified a desire to sever his connection with the company as a passenger. The door was opened, and he was permitted to do so. He passed from the car in perfect safety, to the public streets. Upon the public streets, he received the injury which caused his death. It is thought that the peril was greater at this point, because of the fact that those using the streets for traffic or travel were not charged with notice that passengers were being discharged at that point, and would not be as careful in their driving and in the management of their vehicles as they would be at a point where it was customary for passengers to alight from a car; that those using the street for traffic or travel, not having any warning that passengers were about to alight from a car at a point not customarily used by the company for discharging passengers, would not be so vigilant. There is no doubt that the peril was greater, but was it a peril against which the company owed a duty to afford the deceased protection? Deceased had a right to sever his connection with the company as a passenger at any time. The company had not agreed to carry him to any particular point, nor had it assumed any contractual duty to discharge him at any particular point, nor had he advised the company at what point he desired to be released from the car and to sever his connection with the company as a passenger, except as indicated by his act in leaving at this point. He chose his time and place, and he was within his right in doing this. All passengers are discharged upon the public streets, even when discharged at the near crossing. The

right of the passenger to sever his connection at any point is a legal right of which he may avail himself—a right which the company cannot deny him; at least, it owes no duty to forcibly detain him, after he has expressed his desire to sever his connection, and leave the car. There is nothing in this record to show that the peril was greater at the point where he did alight than it would have been at the near intersection, except as that peril may be found in the suppositional fact that those using the street for traffic would be less on their guard, less watchful and careful, in the middle of the block than they would be at the near intersection.

There is no negligence predicated on the failure to warn him of the danger when he was about to alight. The record shows that the defendant was mature, in full possession of all his faculties; that he voluntarily chose to leave the car at this point. It does not appear that there was anything to obscure his view of the street towards which he was about to proceed, or that he did not have knowledge of the congested nature of the street and the frequency with which automobiles were passing and repassing. He signified his purpose to leave the car, and, in obedience to this, the door was opened, and he was permitted to alight. He alighted in safety. He reached the street in safety. He had taken a few steps upon the street (the number is in dispute), when he was struck. The evidence shows that he neither looked to the right nor to the left as he stepped from the car, nor as he proceeded out upon the street. The automobile was but a short distance away from him at the time. The slightest care on his part would have discovered the approaching automobile. The party in charge of the car was in no better position to know the peril that attended his exit than was the deceased. No duty rested on the street car company to escort him from its car to a place of safety upon the street. When he severed his con-

nection and passed onto the street, he was free to move in any direction that his fancy suggested. The company then had no power over his motions.

Courts have differentiated between the duties of a street car company to its passengers and a commercial railway, in so far as a duty rests upon either to furnish safe passage to and from a car. From the very nature of things, a street car company cannot discharge those duties with respect to passengers. It has no control over the streets or traffic upon the streets. It has no stations or platforms, and can erect none upon the street. From the curbing to the car is a public place, open to travel by all, and over it the company has no jurisdiction or control. It owes, therefore, no duty to protect the passenger after he has passed from the car onto the street. If it owes no affirmative duty, no liability can be predicated upon its failure to act affirmatively. If it owes neither contractual nor legal duty to the passenger, after he leaves the car, to protect him against injury, then a failure to afford him protection does not involve the company in negligence, or lay the basis for liability. This question has been before the courts many times, though never in this form before our own court.

In *Scanlon v. Philadelphia Rapid Transit Co.*, 208 Pa. 195 (57 Atl. 521), a case in which plaintiff was riding upon a street railway, and suffered injury by reason of defects in the street, the Supreme Court of Pennsylvania said:

"The car was running upon the public highway, over which, it must be remembered, the defendant company has no control. In laying its tracks, it must conform to the established grade. It can neither construct nor alter any of the places at which passengers are to step on or off its cars. It is obliged to place its tracks and run its cars where the public authorities direct. The contour of the surface of the street and the sides and gutters are all fixed by the municipal authorities. Passengers leaving the cars must step

upon the surface of the street in the condition in which it
is placed by the city, which fixes and maintains the grades.
Obviously, the rules which might well and reasonably apply
to steam railroads, owning their own right of way and
having complete control of the approaches thereto, cannot
reasonably be applied to street railways, which have not
the right of eminent domain, and are only allowed the use
of the public highways in common with other vehicles. It
may be that, in this case, the conductor misunderstood the
signal of the plaintiff, and stopped the car sooner than she
wished; but, if so, she had only to signify that fact, and
retain her seat, and be carried to the desired spot. She was
under no compulsion, nor did she receive even a suggestion
from the conductor as to where she should get off. That
was a matter solely for herself. But the stopping of the
car had nothing whatever to do with the cause of the acci-
dent; that resulted entirely from the manner in which she
left the car. The fact that the street sloped off at the side
upon a descending grade to the gutter, necessitated a very
long step for any passenger attempting to get off in that
vicinity. But this fact was perfectly obvious to the plain-
tiff, if she used her eyes, which she was certainly bound to
do. She was leaving the car in broad daylight, and she was
apparently able-bodied, and in the full possession of her
faculties; and there was no reason for the conductor to in-
terfere with her desire to leave the car at that particular
time and place. * * * The car was standing perfectly
still, and so remained until after she left it. It is true that
the highest courtesy upon the part of the conductor would
have impelled him to step off the car and assist a lady to
alight, who desired to leave the car at a point which in-
volved the taking of an unusually long step; but we cannot
say that he was under any legal obligation to do so. We
know of no rule which requires the conductor of a street
car to supervise every motion of a passenger stepping from

a stationary car to the ground.   We think he may assume that, under such circumstances, in broad daylight, with everything open to view, the passenger, even though a woman, may be allowed to judge for herself the distance she can safely step."

*Oddy v. West End Street R. Co.*, 178 Mass. 341 (59 N. E. 1026), was an action to recover damages for injuries received by a passenger in the act of leaving a car of a street railway company and coming in contact with a hose cart, rapidly moving on the street.   The court said:

"Street-car companies, carrying passengers in ordinary public streets or highways, are not negligent in not providing means for warning passengers about to leave a car of the danger of colliding with or being run over by other vehicles in the street.   The risk of being hurt by such vehicles is the risk of the passenger, and not that of the carrier. It is not a danger against which the carrier is bound to protect the passenger or to give him warning."

In *Powers v. Connecticut Co.*, 82 Conn. 665 (74 Atl. 931), the Supreme Court of Connecticut said, after stating the fact that she was injured after she alighted from the car:

"A passenger on a street car ceases to be such when, at the end of his trip, he steps from the car upon the street. He then becomes a traveler upon the highway, and those responsible as common carriers for the due operation of the railway are not responsible, as such, for his safe passage across the road."

As bearing upon the same question, see *Creamer v. West End Street R. Co.*, 156 Mass. 320 (31 N. E. 391); *Farrington v. Boston Elev. R. Co.*, 202 Mass. 315 (88 N. E. 578); *Conway v. Lewiston & A. H. R. Co.*, 87 Me. 283 (32 Atl. 901); *Smith v. City & Suburban R. Co.*, 29 Ore. 539 (46 Pac. 136); *Indianapolis St. R. Co. v. Tenner*, 32 Ind. App. 311 (67 N. E. 1044); *Street Railway v. Boddy*, 105 Tenn. 666

(58 S. W. 646). In 4 Ruling Case Law 1047, we find the following:

"It is the generally accepted view that one who has alighted from a street car and is in safety upon the high-way is no longer a passenger, but is thenceforth a traveler upon the highway, and subject to all the duties and obligations imposed upon such travelers; and the railway company is not responsible to him, as a carrier, for the condition of the street, or for his safe passage from the car to the sidewalk."

On page 1254 of the same volume we find:

"Where street car companies receive or discharge passengers, not at a regular station, but on a public street or highway, as has been seen, it is the general rule that, after a passenger on a street car has safely alighted on the street, the relation of passenger and carrier terminates."

The authorities hereinbefore cited express a reasonable and just rule, though there are some exceptions in the application of the rule. We are satisfied to follow them. We therefore hold that the court did not err in directing a verdict for the defendant in this suit. No actionable negligence was proven, and, therefore, nothing for which the company is liable. Its action is, therefore,—*Affirmed.*

WEAVER, C. J., LADD and STEVENS, JJ., concur.