THOMAS F. MacLEARN, Administrator, Appellant, v. IOWA SOUTHERN UTILITIES COMPANY et al., Appellees.

No. 40527.

FEBRUARY 10, 1931.

REHEARING DENIED MAY 6, 1931.

Lloyd L. Duke, and Gilmore & Moon, for appellant.

McNett, McNett & Kuhns and Starr & Jordan, for appellees.

EVANS, J.—On July 18, 1926, in the City of Ottumwa, Dorothy MacLearn, the daughter of the administrator, was struck by an automobile, driven by the defendant Aaron Fellows, just as she had alighted from a street car, owned and operated by the defendant-Southern Utilities Company.

This action was brought in the first instance in the district

court of Wapello County against both defendants and was later transferred, upon motion for change of venue, to Van Buren County, which was the residence of the defendants Fellows. This defendant was awarded a separate trial and such trial was had in Van Buren County. The question presented to the district court by motion to direct the verdict, was whether the evidence was sufficient to sustain any of the allegations of negligence against this defendant. Such is the question presented to us. The circumstances of the accident were very distressing and call loudly for redress against whomsoever was responsible for the injury.

The time of the accident was about eleven P. M. The place of the accident was at the intersection of Court Street and Pennsylvania Avenue in the city of Ottumwa. Court Street extends north and south and Pennsylvania Avenue east and west. Dorothy was then living at the southeast corner of this intersection. This defendant operated a street car line over Court Street, a single track being laid along the center line. On the night in question about 11 o'clock, or a little later, Dorothy alighted from a north bound car at this intersection. As she started to go eastward from the street car to the curb she was struck by a passing automobile driven by defendant Aaron Fellows and received fatal injuries.

The negligence alleged in the petition as against this defendant is that the street car in question failed to stop on the near-side of the intersection and at the south line thereof and that it passed to the center of the intersection before, and where, it stopped; and that the operator of the car failed to warn Dorothy that the car had stopped in the middle of the intersection and failed to warn her of the peril upon the street from automobiles or other street traffic. The immediate circumstances preceding and attending the accident may be stated briefly. Dorothy was a bright young girl of sixteen years of age and a junior in the Ottumwa High School. A young man of her own age, Orville Armentrout, was escorting her home. Mrs. Perryman, a neighbor, and her eleven year old daughter, were riding on the same car and were destined to alight at the same intersection. These persons constituted a visiting group. They forgot to give the signal for a stop at Pennsylvania Avenue at the usual place. When the signal was later given by Dorothy the car was brought

to a quick and easy stop at the center of the intersection rather than at its south line. No complaint is made of the method of the stop or of any inconvenience therefrom. Both of the streets in question were paved and the intersection was in a good smooth condition. The pavement on Pennsylvania Avenue was 24 feet wide. There was a street light at the intersection and there was no want of visibility. At the stopping of the car, Dorothy was first at the door and proceeded to the pavement. While walking to the curb she was struck as before indicated.

Some contention is made in argument by appellant here that she was struck while she was still upon the steps of the street car and before she had ceased to be a passenger; and argument is predicated upon that hypothesis. Such contention goes beyond any allegation in the petition. But ignoring the question of pleading the record does not sustain this premise of the argument. The plaintiff called Aaron Fellows as a witness, who gave his version of the accident. He testified that he was from four to seven feet distant from the car at the time the automobile struck Dorothy and that she was running toward the curb. Armentrout was used as a witness. He was following Dorothy in her exit and was himself standing on the upper step. He testified as follows:

"She stepped right down on the first step and onto the pavement facing right across the street and I was just behind her. Dorothy had stepped down and started off and my feet were still upon the platform when I looked through the glass in the door and saw the automobile coming. It had not yet reached the rear end of the street car. Through the door I could see the automobile coming back there. I don't think it was quite to the rear of the street car. Dorothy didn't wait for me. She started on across east. When she started going down off the step the automobile hadn't yet reached the street car but was back of the street car a little ways and she just kept on going right down the step and onto the ground." * * * "I just happened to glance to my right through that glass in the door and if I hadn't seen the automobile I would have gone right out and followed Dorothy on across to the curb." * * * "She wasn't running and she wasn't walking; she started across. I will now say that she made one step from the ground and started to take the other one

to go across. She had started across. It was smooth brick pavement there where she got to the ground. This smooth brick pavement was all across that intersection. She had stepped onto the ground and started to run across and had started to take her next step.''

Upon this record it is undisputable that the injury occurred immediately, and wholly, after Dorothy had ceased to be a passenger. We have before us therefore only the question whether the defendant-company violated some alleged duty owing to her while she was still a passenger. These alleged violations, as already stated, were that the operator of the car failed to bring it to a stop at the south line of the intersection and that he failed to warn her of the dangers to be encountered from street traffic in such intersection.

■ I. The line of argument adopted by the appellant is that when Dorothy signaled for a stop, it amounted legally to a demand that the car be stopped on *the south side of the intersection* because such was the usual stopping place; that the stopping of the car in the middle of the intersection was without the consent of Dorothy and without her knowledge and that her peril from street traffic was increased thereby against her consent; that this wrongful act was intensified by the failure to warn her that the stop was in the middle of the intersection and that she would thereby encounter greater peril. Counsel for appellant candidly bring to our attention certain of our prior decisions, which on their face are quite decisive against them. They concede candidly that the cases are fatal to them unless they can show differentiation between them and the case at bar. They rest their case upon such purported differentiation. The first of the cases so cited is Chesley v. Waterloo, C. F. & N. R. Co., 188 Iowa 1004. We can do no better in the consideration of this argument than to quote pertinent excerpts from the opinion in that case as follows: (pp. 1006-11)

''While the defendant was on the car, while he was a passenger, the company owed him the high duty which the law imposes upon common carriers. When that relationship ceased, this high duty ended. When he passed from the car onto the street, his relationship with the company ended, and he became as any other traveler upon the public highway, subject to the

perils of such travel. What legal duty, then, did the company violate or neglect that contributed to or caused the injury that resulted in his death? It received him as a passenger, and carried him in safety to a point where he signified a desire to sever his connection with the company as a passenger. The door was opened, and he was permitted to do so. He passed from the car in perfect safety, to the public streets. Upon the public streets, he received the injury which caused his death. It is thought that the peril was greater at this point, because of the fact that those using the streets for traffic or travel were not charged with notice that passengers were being discharged at that point, and would not be as careful in their driving and in the management of their vehicles as they would be at a point where it was customary for passengers to alight from a car; that those using the street for traffic or travel, not having any warning that passengers were about to alight from a car at a point not customarily used by the company for discharging passengers, would not be so vigilant. There is no doubt that the peril was greater, but was it a peril against which the company owed a duty to afford the deceased protection? * * * There is nothing in this record to show that the peril was greater at the point where he did alight than it would have been at the near intersection, except as that peril may be found in the suppositional fact that those using the street for traffic would be less on their guard, less watchful and careful, in the middle of the block than they would be at the near intersection. * * * The party in charge of the car was in no better position to know the peril that attended his exit than was the deceased. No duty rested on the street car company to escort him from its car to a place of safety upon the street. When he severed his connection and passed onto the street he was free to move in any direction that his fancy suggested. The company then had no power over his motions. Courts have differentiated between the duties of a street car company to its passengers and a commercial railway, in so far as a duty rests upon either to furnish safe passage to and from a car. From the very nature of things, a street car company cannot discharge those duties with respect to passengers. It has no control over the streets or traffic upon the streets. It has no stations or platforms, and can erect none upon the street. From the curbing to the car is a public place, open to travel by all,

and over it the company has no jurisdiction or control. It owes, therefore, no duty to protect the passenger·after he has passed from the car onto the street. If it owes no affirmative duty, no liability can be predicated upon its failure to act affirmatively. If it owes neither contractual nor legal duty to the passenger, after he leaves the car, to protect him against injury, then a failure to afford him protection does not involve the company in negligence, or lay the basis for liability. This question has been before the courts many times, though never in this form before our own court. * * * 'Street-car companies, carrying passengers in ordinary public streets or highways, are not negligent in not providing means for warning passengers about to leave a car of the danger of· colliding with or being run over by other vehicles in the street. The risk of being hurt by such vehicles is the risk of the passenger, and not that of the carrier. It is not a danger against which the carrier is bound to protect the passenger or to give him warning.' ''

In Morris v. Omaha & C. B. St. Ry. Co., 193 Iowa 616, we said:

''A street car company is not responsible for any peril which the passenger incurs after the car has stopped, and the passenger has secured a safe landing place (citing cases). * * * The relation of passenger terminated when plaintiff entered upon the highway. Some point must be reached when this relationship ends, and it must be such a point that is free from all speculation and uncertainty. We accept the pronouncement of the Massachusetts Supreme Court in adopting the rule that this relation terminates the moment the passenger descended to the street.''

We re-affirmed the foregoing pronouncements in Fitzgerald v. Des Moines City R. Co., 201 Iowa 1302. In that case however we held that upon the record therein a jury question was presented. The cited cases from which the foregoing excerpts are taken are strongly fortified by previous cases cited therein. The pronouncements therein made are quite universally adopted in their jurisdictions. There is no substantial divergence therefrom in any other jurisdiction; nor does the appellant purport to cite authority to the contrary. The substance of these holdings is

that a street car company must necessarily discharge its passengers into the street; that it has no control of the street or of its traffic; that its control of its passenger ceases when the passenger alights upon the street and that its duty to the passenger ceases at the same moment; that the operator of the street car owes no duty of warning a departing passenger against the perils of street traffic,—these being as obvious to the passenger as to the operator. It may be noted also at this point that the automobile which struck Dorothy was moving north on Court Street and not east or west on Pennsylvania Avenue. So far as street traffic moving north on Court Street was concerned, the stopping of the street car at the center of the intersection did not in a legal sense present any greater peril than a stop at the south line of the intersection would have presented. The statute has interposed its protection to passengers alighting from a street car by limiting the approach of a motor vehicle to a street car while it is discharging or receiving its passengers. This statute was as effective in its operation when the car stopped at the middle of the intersection as if it had stopped at the south line thereof.

We deem it clear that the evidence in the record wholly fails to show negligence on the part of the street car operator.

The judgment below is accordingly affirmed.

FAVILLE, C. J., and MORLING, KINDIG, and GRIMM, JJ., concur.