Shumaine BURTON, by His Co–Conservators, Hawkeye Bank of Des Moines and Lovella White Agnew, and Lovella White Agnew, Individually, Appellants,

v.

DES MOINES METROPOLITAN TRANSIT AUTHORITY, Appellee.

No. 93–1963.

Supreme Court of Iowa.

April 26, 1995.

Michael J. Galligan, Timm W. Reid, and James A. Albert of the Michael J. Galligan Law Firm, P.C., Des Moines, for appellants.

James R. Bowers of Brick, Gentry, Bowers, Swartz, Stoltze, Schuling & Levis, P.C., Des Moines, for appellee.

SNELL, Justice.

Shumaine Burton was injured by a car that struck him after he left a city bus and attempted to cross the street. Shumaine, by his representatives, sued the defendant, Des Moines Metropolitan Transit Authority, claiming that the MTA was negligent and caused the accident. The trial court held as a matter of law that neither assertion could be established. Plaintiffs appeal; we affirm.

I. Factual Background

On Saturday, February 9, 1991, Shumaine Burton, a ten-year-old boy, boarded an MTA bus, alone, in downtown Des Moines. Shumaine was heading to his home located north of University Avenue. He had been riding MTA buses with his mother since he was four years old. Shumaine began riding public buses alone, with his mother's knowledge

and consent, when he was approximately nine years old. He rode on the bus alone almost every day for approximately six months prior to the accident.

The bus traveled from downtown Des Moines and eventually headed east on East University Avenue. The bus passed the intersection of East 16th Street and East University and stopped near a posted stop on the side of the southern-most eastbound lane. This stop is across from where McCormick Street forms a "T" intersection with East University. East University is a four-lane street with two lanes each running east and west.

No marked crosswalk, sidewalk, stop sign, or traffic lights exist at the location of the stop. There is a strip of land on which a person may stand between an embankment and the southern eastbound lane of East University. The area of land directly to the south of the street is an undeveloped grass field.

After the bus stopped, Shumaine exited through the front door. After exiting the bus, Shumaine proceeded a short distance in an easterly direction on the south side of the road. He then turned and stepped off the curb into the street to cross the street from its south side to its north side. Shannon Smith, a passenger in a car headed west on East University, saw Shumaine "look both ways" before stepping into the street. The driver of the car, Marysue E. McMulin, slowed the car because she saw that Shumaine was going to cross the street. McMulin also observed Shumaine "look both ways" before stepping into the street. As Shumaine attempted to cross, a vehicle driven by Houng Dinh Kouang passed the bus in the northern eastbound lane and struck Shumaine causing him serious injuries.

Shumaine's mother, Lovella White Agnew, individually, and Shumaine, by his co-conservators, Hawkeye Bank of Des Moines and his mother, brought an action against Kouang and La Q Rasavanh, the owner of the vehicle Kouang was driving at the time of the accident. The parties settled this matter, prior to trial, for $200,000. In February of 1992, the co-conservators filed a petition against the MTA which alleged, generally, that the MTA was negligent for: (1) failing to exercise reasonable care in providing bus transportation; (2) failing to exercise the degree of care required of a public carrier; (3) locating a bus stop at an unsafe location; (4) failing to warn Shumaine of the dangers associated with crossing the street at the location of the stop and under the existing conditions; (5) failing to maintain a lookout for traffic passing the bus; and (6) failing to exercise reasonable care.

The MTA filed a motion for summary judgment requesting the trial court to dismiss the plaintiffs' claims on the ground that, based on the undisputed facts, the MTA did not owe Shumaine a duty of care as a matter of law after he had alighted from the bus. MTA further argued that even if it did owe a duty, no actions of the MTA constituted a breach of its duty or a proximate cause of Shumaine's injuries. The MTA also asserted that the Kouang vehicle was an independent, intervening cause.

The trial court granted the MTA's motion for summary judgment on all grounds the MTA asserted. The court held that the MTA's duty to exercise care for Shumaine terminated when he safely alighted from the bus. The court further held that the location of the stop was safe, and even if the stop had been unsafe, there was no legal nexus between any act of the MTA and the accident. For this reason no actions of the MTA could have constituted a proximate cause of Shumaine's injuries.

Shumaine's co-conservators have appealed the trial court's decision to this court. On appeal, the co-conservators argue: (1) the MTA owed a duty of care to Shumaine to guard him against foreseeable danger after he had alighted from the bus, due to his age; (2) the bus stop did not constitute a safe place for a child of Shumaine's age to alight; (3) the law charged the MTA with a duty to warn Shumaine of the dangers of exiting the bus at the location of the stop; (4) sufficient evidence exists to demonstrate the MTA breached the duty of care it owed Shumaine; and (5) sufficient evidence exists to show the MTA's actions constituted a proximate cause of Shumaine's injuries.

## II. Standard and Scope of Review

■ When reviewing a trial court grant of a motion for summary judgment, we consider the evidence in the entire record in the light most favorable to the non-movant and determine whether any issue as to any material fact exists. *Ciha v. Irons*, 509 N.W.2d 492, 493 (Iowa 1993); *West Bend Mut. Ins. Co. v. Iowa Iron Works, Inc.*, 503 N.W.2d 596, 598 (Iowa 1993). Summary judgment is appropriate if no issue as to any material fact exists and the moving party is entitled to judgment as a matter of law. *Ciha*, 509 N.W.2d at 493; *West Bend Mut. Ins.*, 503 N.W.2d at 598. We review the district court's decision for errors of law. Iowa R.App.P. 4; *Ciha*, 509 N.W.2d at 493; *Keller v. State*, 475 N.W.2d 174, 179 (Iowa 1991).

## III. Existence of Duty of Care

The co-conservators argue that the issue of the existence of a duty of care on the part of the MTA toward Shumaine should have been submitted to the jury. The co-conservators assert that issues of material fact existed with regard to whether the MTA had a duty of care to Shumaine under the circumstances and therefore, the trial court erred in granting the MTA's motion for summary judgment. The trial court held that, as a matter of law, the MTA owed no duty of care to Shumaine beyond that existing in the normal carrier/passenger situation.

■ It is axiomatic that the threshold question in any negligence action is whether the defendant owed the plaintiff a legal duty. *Shaw v. Soo Line R.R.*, 463 N.W.2d 51, 53 (Iowa 1990). Duty is a question of whether the relationship between the actor and the injured person gives rise to any legal obligation on the actor's part for the benefit of the injured person. *Leonard v. State*, 491 N.W.2d 508, 509 (Iowa 1992). Whether a particular duty arises out of parties' relationship is always a matter of law for the court to decide. *Leonard*, 491 N.W.2d at 509; *Shaw*, 463 N.W.2d at 53; *Engstrom v. State*, 461 N.W.2d 309, 315 (Iowa 1990); *Poe v. City of Detroit*, 179 Mich.App. 564, 446 N.W.2d 523, 526 (1989). This is true, in part, because duty includes an assessment of competing policy considerations. *Leonard*, 491 N.W.2d at 509.

■ In general, the law charges common carriers with the duty to protect passengers as far as human care and foresight will go. *Ravreby v. United Airlines, Inc.*, 293 N.W.2d 260, 264 (Iowa 1980). A carrier is liable for slight negligence but is not an insurer of a passenger's safety. *Id.; Poe*, 446 N.W.2d at 526. A carrier holds a duty to protect passengers from dangers which may reasonably and naturally be anticipated. *Murray v. Cedar Rapids City Lines, Inc.*, 242 Iowa 794, 800, 48 N.W.2d 256, 260 (1951). We have held that the duty of care does not require actions which prevent the practical performance of the carrier's duty "to transport with expedition in accordance with the usual requirements of the business." *Id.*

The general law among American jurisdictions holds that a carrier has an affirmative duty to discharge a passenger in a reasonably safe place. *Poe*, 446 N.W.2d at 526. Once the passenger safely alights, the carrier/passenger relationship ends and the carrier's duty to the passenger resulting from the carrier/passenger relationship ceases. *Id.* at 527. Courts have been reluctant to hold common carriers liable for injuries to passengers caused by vehicles moving in traffic after the passenger safely alights. *Id.* The rationale for this rule is that after alighting, the passenger's individual choice directs where he or she will walk, the passenger is in a better position to guard against the dangers of moving vehicles, and "common sense, logic, and public policy simply do not support extending a duty of care to the public carrier to insure that once the passenger has safely departed, the city's streets or sidewalks will be absolutely free from defect." *Connolly v. Rogers*, 195 A.D.2d 649, 599 N.Y.S.2d 731, 732 (1993) (quoting *Blye v. Manhattan & Bronx Surface Transit Operating Auth.*, 124 A.D.2d 106, 511 N.Y.S.2d 612, 615 *aff'd*, 72 N.Y.2d 888, 532 N.Y.S.2d 752, 528 N.E.2d 1225 (1988)); *Poe*, 446 N.W.2d at 526.

■ With the establishment of the carrier/passenger relationship, the MTA assumed an affirmative duty to provide Shumaine a safe place to alight. *Thomas v.*

*Hampton Express, Inc.,* 617 N.Y.S.2d 831, 832 (App.Div.1994); *Connolly,* 599 N.Y.S.2d at 732. The co-conservators claim a fact issue is created on whether the place of discharge was safe because it was not located at a crosswalk, sidewalk, or stop light area. A large embankment also prevented a level walkway next to the street to the 17th Street corner. However, given the truth of these facts, the record establishes that Shumaine safely exited the bus and was seen walking in front of the bus after alighting. Shumaine was not prohibited from moving safely away from the point of his discharge from the bus by any physical obstruction or hazardous condition on the terrain. Even the embankment next to the street contained a footpath over it leading from the point of discharge from the bus through a grassy area paralleling Grand Avenue up to 17th Street. Shumaine could have walked the footpath instead of attempting to cross the street in front of the bus. *See, e.g., Rodriguez v. Manhattan & Bronx Surface Transit Auth.,* 117 A.D.2d 541, 498 N.Y.S.2d 826, 827 (1986).

The co-conservators also sought to establish by depositions that mid-block stops are dangerous and against industry standards. Counter evidence was presented as to the nature and location of the stop and that it was not unsafe in the industry. In any event, the relevance of this evidence is questionable in light of the undisputed fact that Shumaine safely alighted from the bus.

The co-conservators argue that we should assign a duty of care to common carriers in the case of children alighting from public buses because the law assigns such a duty to the drivers of school buses. The co-conservators assert that the standard of care should depend on the capacity of the passenger and should not rely on the nature of the bus. Therefore, the co-conservators argue, no reason exists to apply a different standard of care to public carriers as opposed to the drivers of school buses.

 The law has established some specific duties owed by a school bus driver to pupil/passengers. When a relationship of school bus driver and pupil/passenger exists, the driver must use the care that "an ordinarily prudent bus operator would exercise in looking after the safety of a child in his charge of the age of the pupil involved." *Johnson v. Svoboda,* 260 N.W.2d 530, 534 (Iowa 1977). If pupils must cross the highway, the law requires them to pass in front of the bus, look in both directions, and proceed to cross the highway only on signal from the bus driver. Iowa Code § 321.372(2) (1993); *Johnson,* 260 N.W.2d at 534. If a violation of a provision of section 321.372 for a pupil's safety was shown, the violation would constitute negligence per se under the doctrine of *Kisling v. Thierman,* 214 Iowa 911, 243 N.W. 552 (1932). Thus, the law has established for the safety of the pupil/passenger specific duties of care extending beyond the time and place of discharging the pupil from the school bus. Even so, that duty of the school bus driver does not extend beyond the street into an adjacent side yard. In *Johnson,* the trial court found and the supreme court affirmed that the relationship of school bus driver and passenger terminated when the passenger crossed the road and went into the safety of the yard. *Johnson,* 260 N.W.2d at 534; *see also* Iowa Code § 321.372(2).

 The co-conservators' attempt to coalesce the duties of a school bus driver and an MTA bus driver has no supporting authority. A reason for this is that the difference in duties exists due to the nature of the relationship between the driver and the passenger. The duties of a school bus driver are defined by the duties imposed by the law on school districts, not the duties imposed on common carriers. *Anderson v. Shaughnessy,* 519 N.W.2d 229, 232 (Minn.Ct.App.1994). The law charges school districts with the care and control of children and requires the school district to exercise the same standard of care toward the children that a parent of ordinary prudence would observe in comparable circumstances. *See Besette v. Enderlin Sch. Dist. No. 22,* 310 N.W.2d 759, 763 (N.D. 1981). Such a special relationship does not exist between a common carrier and a child passenger, and therefore, the law does not extend a duty of care beyond the reaches of the carrier/passenger relationship. Since no such custodial relationship exists between a public carrier and a child passenger, we find

the attempted analogy to the law applicable to school bus drivers to be inapt.

IV. Public Transportation

Our court has considered the extent of responsibility owed by public transportation drivers to the general public on several occasions. In *Chesley v. Waterloo, Cedar Falls & Northern Railroad,* 188 Iowa 1004, 176 N.W. 961 (1920), the plaintiff's intestate, after alighting from a street car, was struck by a passing automobile. The analysis of our court was premised by this statement:

> All negligence is bottomed on the idea of a duty neglected, and it becomes important to ascertain the exact relationship existing between the deceased and the street car company, at the time the injury occurred, in order to say, in a legal way, what duty the defendant company owed the deceased, at and immediately prior to his injury.

*Id.* at 1006, 176 N.W. at 961. In response to the plaintiff's argument that the passenger was negligently discharged mid-block the court said:

> There is nothing in this record to show that the peril was greater at the point where he did alight than it would have been at the near intersection, except as that peril may be found in the suppositional fact that those using the street for traffic would be less on their guard, less watchful and careful, in the middle of the block than they would be at the near intersection.

*Id.* at 1008, 176 N.W. at 962. Our court held that the trial court did not err in directing a verdict for the defendant.

In *Morris v. Omaha & Council Bluffs Street Railway,* 193 Iowa 616, 187 N.W. 510 (1922), the plaintiff, after leaving a street car, took several steps on the unimproved highway, walked into a depression, fell, and was injured. Our analysis was as follows:

> [A]fter plaintiff had alighted safely from the said street car she could and did choose her own course and direction, and she might have taken a number of different courses and directions.

. . . .

The duty of a street railway company to exercise due care for the safety of a passenger continues only while the relation of passenger and carrier exists. If the passenger has safely alighted from the car and enters upon a public highway of his own choosing the relation of passenger terminates, and consequently the duty owing to the passenger by the carrier.

. . . .

The duty which the law imposes upon an ordinary railroad company to provide and maintain a safe place for landing its passengers has no application to a street car company operating its line along a public street or road, but the duty imposed upon such a company is to select a reasonably safe place for landing its passengers, and to make such selection with reference to getting off the car while it is at rest. A street car company is not responsible for any peril which the passenger incurs after the car has stopped, and the passenger has secured a safe landing place.

The relation of passenger terminated when plaintiff entered upon the highway. Some point must be reached when this relationship ends, and it must be such a point that is free from all speculation and uncertainty. We accept the pronouncement of the Massachusetts Supreme Court in adopting the rule that this relation terminates the moment the passenger descended to the street.

*Id.* at 618–19, 187 N.W. at 511–12 (citations omitted).

Another pedestrian accident involving a street car was presented in *MacLearn v. Iowa Southern Utilities Co.,* 212 Iowa 555, 234 N.W. 851 (1931). In this case, the passenger alighted from the street car, walked eastward from the street car to the curb, and was struck by a passing automobile. Negligence of the street car operator was alleged in stopping the car in the center instead of the near-side of the intersection. In affirming the directed verdict for the defendant, our court found that the stop in the center of the intersection did not in a legal sense present any greater peril than a stop at the south line of the intersection would have presented. *But cf. Fitzgerald v. Des Moines City Ry.,*

201 Iowa 1302, 207 N.W. 602 (1926) (jury issue existed as to whether the street car was moving so that appellant did not "alight in safety" upon the public street).

A recent Michigan case involving a pedestrian who had just alighted from a city bus bears a striking resemblance to the case at bar. *See Poe,* 446 N.W.2d at 523–30. The bus driver, at the request of a thirteen-year-old passenger, had pulled to the curb a few feet from the intersection. The stop was in a no parking zone which was not officially designated as a bus stop. The passenger safely alighted from the bus, walked forward away from the stopped bus, ran into the street emerging from the cover of the bus, and was killed by a passing vehicle. On the relationship between the passenger and the bus operator, the Michigan court said:

> Whether or not the law will impose such an obligation depends on the relationship between the actor and the injured person. It is for the court to determine, as a matter of law, what characteristics must be present for a relationship to give rise to a duty.
>
> . . . .
>
> Further, once the passenger safely alights, the special carrier-passenger relationship ends and the passenger becomes an ordinary pedestrian.

*Id.* at 525–27. The jury awarded damages of $716,501 against the City of Detroit, owner of the bus. On appeal, the court reversed the denial of defendant's motion for judgment notwithstanding the verdict, holding as a matter of law that there was no negligent act. *See also Thomas,* 617 N.Y.S.2d at 832.

■ The co-conservators argue that the law applied to street car liability is dated and should not apply to the duties owed by bus drivers to their passengers. We find there is no reasonable distinction to be made in the logic defining these relationships. The responsibility of the street car operator or bus driver terminates when the passenger is no longer on the vehicle.

■ Further argument is made that the bus driver owed a duty to warn of extra danger in crossing a street in front of the bus. The claim is further made that a spe-

cial rule should be crafted to protect young children riding the bus. This claim was also addressed in *MacLearn,* 212 Iowa at 561, 234 N.W. at 854. The court held "[t]hat the operator of the street car owes no duty of warning a departing passenger against the perils of street traffic, [—this is] as obvious to the passenger as to the operator." *See also Sheir v. Metropolitan Dade Co.,* 375 So.2d 1114 (Fla.Dist.Ct.App.1979) (no duty to warn fifteen-year-old who safely alighted from bus of possible dangers after that point); *Mooney v. Niagra Frontier Transit Metro Sys., Inc.,* 125 A.D.2d 997, 510 N.Y.S.2d 393, 394 (1986). Nor do we believe that a separate category of liability for the responsibility of children riding public transportation should be carved out of this general area of law. Primary responsibility for protection of a child using public transportation should remain with the child's custodian, it should not be shifted to a bus driver.

## V. Proximate Cause

In addition to holding that no negligent act of the MTA was proved as a matter of law, the trial court also held that the co-conservators were unable to establish a legal nexus between Shumaine's injury and an alleged breach of duty, even if negligence was shown. Thus, the court held that as a matter of law no proximate cause would exist. A like result was reached in *Poe,* 446 N.W.2d at 530, where the court said:

> Under these circumstances we must conclude that Sneed's actions were not a substantial factor in producing the harm suffered by Eric Poe. As a matter of law, Sneed's act of parking the bus at the curb was not a proximate cause of Eric Poe's accident with the automobile.

*See Morris,* 193 Iowa at 619, 187 N.W. at 512. Also in *Rodriguez,* 498 N.Y.S.2d at 827, the court found that no reasonable view of the evidence supported the conclusion that the bus' momentary obstruction of the crosswalk caused plaintiff's accident. The court's analysis was this:

> Plaintiff's recovery was based on the theory developed during trial that the bus stop at which plaintiff was discharged was not a safe place to alight. Plaintiff's expert, a

pedestrian traffic engineer consultant, testified that the placement of the stop produced a tendency for passengers to cross [the street] by the path plaintiff attempted to take rather than by means of a crosswalk. This tendency was supposedly heightened by the bus' temporary blockage of the crosswalk to the point where the bus' improper placement could be considered the proximate cause of plaintiff's injury. Plaintiff urged that since she had been denied a safe place to alight, [defendant's] duty to her continued until she reached the safety of the curb....

We find that the jury verdict for plaintiff was erroneous as a matter of law. Plaintiff was safely discharged into the assigned bus stop.... At this point, the carrier's duty to plaintiff was at an end.... It was not because plaintiff remained within the confines of the bus stop she was injured. Rather, her injury was eventuated by her independent decision to leave the relative safety of the bus stop and cross [the street].... This decision was plaintiff's own and cannot be attributed to [the defendant's] negligence.

*Id.* (citations omitted).

 Our analysis of the facts and applicable law convinces us that the trial court was correct in granting summary judgment to MTA in this case based on a failure to prove a breach of duty constituting negligence and a lack of proximate cause between any alleged negligence and the injury to Shumaine. Although questions of proximate cause are often for the jury, in exceptional cases, as here, proximate cause may be decided as a matter of law. *See Beeman v. Manville Corp. Asbestos Disease Compensation Fund,* 496 N.W.2d 247, 254 (Iowa 1993). The trial court properly granted defendant's motion for summary judgment.

**AFFIRMED.**

All justices concur except LARSON, J., who dissents, and is joined by LAVORATO, J.

LARSON, Justice (dissenting).

I dissent. I believe the grant of summary judgment was erroneous because there were genuine issues of fact on the allegation that the defendant's selection of the bus stop was negligent.

LAVORATO, J., joins this dissent.