# IN THE COURT OF APPEALS OF IOWA

———————————

No. 25-0516
Filed June 10, 2026

———————————

**Jodi. E. Safris and Michael A. Safris, Individually and as Co-Guardians and Co-Conservators for the Guardianship and Conservatorship of R.R.S.,**
Plaintiffs–Appellants,

v.

**Urbandale Community School District,**
Defendant–Appellee.

———————————

Appeal from the Iowa District Court for Polk County,
The Honorable Samantha Gronewald, Judge.

———————————

**REVERSED AND REMANDED**

———————————

Lori A. Bullock (argued) of Bullock Law PLLC, Des Moines; Jill M. Zwagerman and Myles D. Young of Newkirk Zwagerman, P.L.C., Des Moines; and Cory F. Gourley of Gourley Rehkemper Lindholm, PLC, West Des Moines, attorneys for appellants.

Ryan P. Tunink (argued) and Janice M. Thomas of Lamson Dugan & Murray, LLP, West Des Moines, attorneys for appellee.

———————————

Heard at oral argument by Tabor, C.J., and Chicchelly and Sandy, JJ.
Opinion by Chicchelly, J.

1

**CHICCHELLY, Judge.**

Jodi. E. Safris and Michael A. Safris, individually and as co-guardians and co-conservators of their daughter, R.R.S., (the plaintiffs) appeal an adverse jury verdict on their claims against the Urbandale Community School District for failing to protect their minor daughter from being sexually assaulted and harassed by another Urbandale Middle School student. They argue the district court erred by (1) excluding certain evidence from trial, (2) allowing expert testimony the plaintiffs argue lacks reliable methodology, (3) instructing the jury on the incorrect standard of care, and (4) denying the plaintiffs' motion for new trial because the verdicts were inconsistent. Because the district court erred in instructing the jury on standard of care, we reverse the judgment against the plaintiffs and remand for new trial consistent with this opinion.

## BACKGROUND FACTS AND PROCEEDINGS

In fall 2018, R.R.S. was an eighth grader at Urbandale Middle School. Early in the eighth-grade year, R.R.S. was in a "talking stage"[1] with another student, K.O. When K.O. began to ask R.R.S. for nude photographs, R.R.S. initially resisted but after pressuring by K.O. ultimately agreed. Sometime after that, K.O. asked R.R.S. to be his girlfriend, but she rejected him after learning he was involved with other girls in their grade. Per R.R.S., K.O. had an emotional and angry reaction to the rejection, and out of anger, K.O. began to distribute R.R.S.'s nude photographs to the boys at the school.

R.R.S. faced negative consequences for K.O.'s dissemination of the photographs. She alleged students would harass her by pretending to take a

---

[1] A "talking stage" is the early, undefined dating phase where two people have mutual interest and communicate frequently before officially dating.

picture of their pubic area and then running away, laughing at her. R.R.S. also alleged she was called a slut by her fellow classmates. R.R.S. felt students were laughing and whispering about her whenever she was in the hallway. Wanting to stop the harassment, R.R.S. eventually went to K.O. and asked him to put a stop to what was happening. K.O. agreed to have his friends stop harassing R.R.S. After that, some of the harassment lessened, but R.R.S. claimed she was still called a slut by students and felt embarrassment being at school. R.R.S. did not tell any school staff about the photos or the harassment.

K.O. had developed several behavior issues at school. Because of these issues, the school district placed K.O. on an individualized education plan (IEP). Among other measures to address his behavior, the IEP required teachers to check in with K.O. at least every seven minutes during class time. R.R.S. and K.O. were in the same language arts class. At the middle school, one set of language arts classes were taught in a joint class where two separate rooms were connected. This class was taught by two general education teachers, one special education teacher, and one teaching associate. And the students were seated in groups of four. K.O.'s seat was directly to the left of R.R.S.'s.

Soon after the incident with the nude photographs, R.R.S. alleged K.O.'s harassment turned physical. While R.R.S. sat in language arts class, she claims K.O. began to touch her—at first by putting his hand on her thigh, then by putting his hand in the holes of her ripped jeans, and inside her waist band. And ultimately, K.O. allegedly digitally penetrated R.R.S. According to R.R.S., this continued daily for some time. R.R.S. began wanting not to be at school—she began to tell her mother she was not feeling well so she was

able to miss school.  R.R.S. did not tell any teacher or other staff member about the alleged assaults at that time.

Soon R.R.S. began to misbehave.  She bought marijuana at school and began to use a vape on the school bus.  R.R.S. and her friends began to drink alcohol.  When the school discovered the incidents on the school bus and the fact that R.R.S. had purchased marijuana, she was suspended for ten days.  At that point, R.R.S. told her family she no longer wanted to attend Urbandale Middle School, so she attended a different school for the rest of eighth grade.  Meanwhile, R.R.S.'s family discovered the nude photographs on her phone.  R.R.S. told them she had sent them to K.O. and also told them that the photographs had been disseminated around the school.

R.R.S. initially began doing much better once she started attending a different school.  But in the fall of 2019, during her freshman school year, her mental health began to decline.  She attended a party where K.O. was present.  Upon seeing him, many of R.R.S.'s struggles returned.  She began to feel depressed and engaged in self-harm, and on more than one occasion she attempted to commit suicide.  R.R.S. asked her mother if she could start going to therapy.  When her mother asked her if anyone had hurt her, R.R.S. broke down and told her mother about K.O.'s assaults in class.  R.R.S. continued to struggle with mental-health issues and was diagnosed with bipolar disorder, borderline personality disorder and PTSD.  She was ultimately hospitalized at two residential treatment facilities for a total of twenty months.

Upon returning home, R.R.S. began to attend college.  But she was unable to function in the classroom.  She could not focus or get work done because she was too anxious about her surroundings.  R.R.S. also lost most

of her friends and would mainly spend time with her family.  She was placed on a variety of medications for bipolar disorder, depression, and anxiety.

The plaintiffs filed suit against the Urbandale Community School District and several employees.  Their complaint alleged negligence of the school district for failing to prevent the assault and harassment of R.R.S., and similarly alleged negligence against the employees.  Additionally, the complaint alleged intentional infliction of emotional distress against the principal.  The claims against the individual employees were ultimately dismissed by the plaintiffs.  The case proceeded to trial, and a jury found the school district to be at fault, but found its fault was not the proximate cause of R.R.S.'s injuries.  The plaintiffs now appeal.

## DISCUSSION

### I.    Duty of Care Jury Instruction

The plaintiffs first argue that the district court erred when it refused to give their proposed jury instruction regarding the school district's standard of care.  "We review the district court's jury instructions for prejudicial error, considering the instructions as a whole." *Des Moines Civ. & Hum. Rts. Comm'n v. Knueven*, 988 N.W.2d 694, 700 (Iowa 2023).  The court's instructions "must convey the applicable law in such a way that the jury has a clear understanding of the issues it must decide." *Boyle v. Alum-Line, Inc.*, 710 N.W.2d 741, 749 (Iowa 2006) (citation omitted).  Reversal is warranted where the instructions have "misled the jury" or where the court "materially misstates the law." *DeBoom v. Raining Rose, Inc.*, 772 N.W.2d 1, 5 (Iowa 2009) (citation omitted).  And a district court must issue a proposed jury instruction when it "correctly states the law, has application to the case, and is not stated elsewhere in the instructions." *Id.* (citation omitted).

The plaintiffs' proposed jury instruction read:

> Urbandale Community School District is charged with the care and control of children and must exercise the same standard of care toward them that a parent of ordinary prudence would observe in comparable circumstances. A school has an affirmative duty to take all reasonable steps to protect its students from risks that arise within the scope of school-student relationships.

The district court refused to give the plaintiffs' proposed instruction, reasoning that the supreme court's adoption of the Restatement (Third) of Torts changed the applicable standard of care for school districts. Because of that, the district court instead gave the following instruction to the jury:

> "Negligence" means failure to use ordinary care. Ordinary care is the care which a reasonably careful person would use under similar circumstances. "Negligence" is doing something a reasonably careful person would not do under similar circumstances, or failing to do something a reasonably careful person would do under similar circumstances.

Upon our review, we conclude the district court's refusal to give a version of the plaintiffs' requested instruction was in error. Let us explain.

Beginning in 1995, our supreme court adopted a parental standard of care for school districts. *Burton v. Des Moines Metro. Transit Auth.*, 530 N.W.2d 696, 700 (Iowa 1995). The *Burton* court stated, "The law charges school districts with the care and control of children and requires the school district to exercise the same standard of care toward the children that a parent of ordinary prudence would observe in comparable circumstances." *Id.* (citing *Besette v. Enderlin Sch. Dist. No. 22*, 310 N.W.2d 759, 763 (N.D. 1981)). That clearly remained the standard of care until 2009. *See, e.g.*, *Godar v. Edwards*, 588 N.W.2d 701, 708 (Iowa 1999); *Ette ex rel. Ette v. Linn-Mar Cmty. Sch. Dist.*, 656 N.W.2d 62, 69 (Iowa 2002); *Dang ex rel. Dang v. Des Moines*

*Cmty. Sch. Dist.*, No. 08-1578, 2009 WL 1708827, at *2 (Iowa Ct. App. June 17, 2009). *Godar* and the cases that followed were decided under the Restatement (Second) of Torts. *See Brokaw v. Winfield-Mt. Union Cmty. Sch. Dist.*, 788 N.W.2d 386, 390 (Iowa 2010).

Then in *Thompson v. Kaczinski*, our supreme court adopted the principles of the Restatement (Third) of Torts: Liability for Physical Harm and held, "An actionable claim of negligence requires 'the existence of a duty to conform to a standard of conduct to protect others, a failure to conform to that standard, proximate cause, and damages.'" 774 N.W.2d 829, 834 (Iowa 2009) (citations omitted).

The next year, the supreme court clarified the duty imposed on a school district. *See Brokaw*, 788 N.W.2d at 391. The *Brokaw* court acknowledged *Godar* "makes it clear that school districts have a duty of reasonable care in providing for the safety of students from the harmful actions of fellow students, a teacher, or other third persons." *Id.* at 390–91. The supreme court then discussed the impact of the Restatement (Third) of Torts on the foreseeability analysis. *Id.* at 391. Ultimately, the court concluded that because the defendants in that case did not argue they owed "no duty of reasonable care" but instead argued foreseeability of the harm, the ordinary duty of reasonable care applied. *Id.*

Recently, our supreme court addressed whether school districts owe a fiduciary duty to students. *See Doe v. West. Dubuque Cmty. Sch. Dist.*, 20 N.W.3d 798, 811–812 (Iowa 2025). Relying on authority from another jurisdiction that declined to find a school district owed a fiduciary duty to students, the supreme court discussed that the "nature of the duty the school owed to the student 'was a duty of care arising out of [the school's] in loco parentis status' rather than a 'fiduciary duty arising from any "unique

relationship.""" *Id.* at 811 (alteration in original) (quoting *Franchi v. New Hampton Sch.*, 656 F. Supp. 2d 252, 263 (D.N.H. 2009)). The court then held that in Iowa there is no fiduciary relationship between schools and students. *See id.* at 812 ("While schools, school officials, and teachers have a duty to exercise reasonable care with respect to students, they do not generally have fiduciary relationships with students.").

Returning to this case, we find the supreme court's adoption of the Restatement (Third) did not disturb the standard of care announced in *Burton* and its progeny. While *Brokaw* discusses the duty of reasonable care, it does so in the context of *Godar*. *See Brokaw*, 788 N.W.2d at 391; *see also Godar*, 588 N.W.2d at 708. Our decision is further supported by the Restatement (Third) itself, which recognizes a special relationship between students and school districts. *See* Restatement (Third) of Torts: Physical & Emotional Harm § 40(a),(b)(5) (A.L.I. 2012) (recognizing an affirmative duty on "a school with its students"). So, we conclude the jury should have been instructed that "The law charges school districts with the care and control of children and requires the school district to exercise the same standard of care toward the children that a parent of ordinary prudence would observe in comparable circumstances." *See Burton*, 530 N.W.2d at 700.

Finally, we address the school district's claim that the plaintiffs invited the instructional error because they "requested the very instruction they now object to through their Proposed Jury Instructions." Ordinarily, "a litigant cannot invite error by asking the court to give a requested instruction and thereafter claim error if the court gives such an instruction." *Odegard v. Gregerson*, 12 N.W.2d 559, 562 (Iowa 1944). But that is not what happened here. Upon review of the record, it appears that the plaintiffs requested both the ordinary care instruction the district court gave and the instruction

explaining the standard of care specific to school districts. It is the district court's refusal to give the instruction explaining the standard of care specific to school districts that is in error. Therefore, we do not find the plaintiffs invited error on this record.

Having established the district court failed to instruct the jury on the proper standard of care imposed on school districts despite the plaintiffs' request to do so, we must determine whether reversal is required. We conclude the instruction the jury received was a material misstatement of the law, so we conclude reversal is required. *See DeBoom*, 772 N.W.2d at 5. Because we must remand for a new trial, we next consider the issues raised by the plaintiffs on appeal that may occur on retrial. *See, e.g.*, *Kinseth v. Weil-McLain*, 913 N.W.2d 55, 73 (Iowa 2018).

## II.    Exclusion of Principal's Disciplinary Record

The plaintiffs then argue the district court erred when it excluded evidence relating to complaints, investigations, or documents from the school principal's record with the Iowa Board of Educational Examiners (BOEE). Specifically, they argue the documents could have been admitted under Iowa Rules of Evidence 5.401, 5.405, 5.406, and 5.608. The school district responds that Iowa Code sections 256.158(3)(a) and 272C.6(4)(a) bar the admission of these investigatory files. Evidentiary rulings are discretionary and therefore are reviewed for abuse of discretion. *Pexa v. Auto Owners Ins.*, 686 N.W.2d 150, 158–59 (Iowa 2004). If a court abuses its discretion, "[r]eversal is called for ... only if it appears that prejudice has resulted." *Strain v. Heinssen*, 434 N.W.2d 640, 641–42 (Iowa 1989). Evidentiary rulings are prejudicial only if "it is probable a different result would have been reached but for the admission of the evidence or testimony." *Mohammed v. Otoadese*, 738 N.W.2d 628, 633 (Iowa 2007) (cleaned up).

9

We begin with whether there are statutory bars to the admission of these documents. We conclude both Iowa Code sections 272.13(3) (2022) (current version at Iowa Code § 256.158(3)(a)) and 272C.6(4)(a) bar the admission of "complaint files, investigation files, other investigation reports, and other investigative information in the possession of the [BOEE]." But we find that statutory bar does not extend to the written decision and fact findings of the BOEE. *See* Iowa Code §§ 256.158(3)(a) ("A final written decision and finding of fact of the [BOEE] in a disciplinary proceeding is a public record."), 272C.6(4)(a) (same). Because the plaintiffs did not seek to admit the investigative files but the public findings of the BOEE, we do not find the statutory bar applies in this case.

The plaintiffs argue the evidence should be admitted as evidence of the principal's habit under Iowa Rule of Evidence 5.406. Iowa Rule of Evidence 5.406 provides,

> Evidence of a person's habit or an organization's routine practice may be admitted to prove that on a particular occasion the person or organization acted in accordance with the habit or routine practice. The court may admit this evidence regardless of whether it is corroborated or whether there was an eyewitness.

Our supreme court has defined habit evidence as "a regular practice of meeting a particular kind of situation with a specific type of conduct." *State v. Don*, 318 N.W.2d 801, 806 (Iowa 1982) (quoting *McCormick's Handbook of the Law of Evidence* § 195, at 462–63 (Edward W. Cleary ed., 2d ed. 1972)). "Evidence of habit is admissible to show that a person is likely to have acted on a particular occasion in conformity with that habit." *Id.*

In *Holmes v. Pomeroy*, our supreme court left open the question of whether conduct that occurred after the events at issue in that case could be used to establish a habit under rule 5.406. *See* 959 N.W.2d 387, 390 (Iowa,

2021). Instead, the court determined that the evidence in that case was "not numerous enough to constitute habit evidence." *Id.* at 391. We reach the same conclusion here. The evidence proffered by the plaintiff is a single instance of discipline, and it cannot be used to establish that the principal had a habit of "disregarding ethical and legal responsibilities."

Finally, we consider whether the BOEE's public findings are otherwise relevant in this case. The decision to admit evidence requires a two-step inquiry: (1) is the evidence relevant? and (2) if so, is its probative value substantially outweighed by the danger of prejudice or confusion? Iowa Rs. Evid. 5.401, 5.403. Because the evidence is not otherwise allowed by a specific rule of evidence and it does not have the "tendency to make a fact more or less probable," we conclude it is not relevant. *See* Iowa R. Evid. 5.401.

We do not address whether the evidence could be used to establish the principal's character for untruthfulness under Iowa Rule of Evidence 5.608. That rule specifically allows for attack on a witness's character for untruthfulness "by testimony in the form of an opinion about that character." Iowa R. Evid. 5.608(a). But extrinsic evidence "is not admissible to prove specific instances of a witness's conduct." Iowa R. Evid. 5.608(b). The evidence here is extrinsic, so it is barred by rule 5.608. And while the district court may allow inquiry into specific instances of a witness's conduct on cross-examination, we do not opine over whether that scenario may play out on retrial and leave that to the district court. *See id.*

To summarize, on remand we find the BOEE's investigative file is not admissible for any purpose. We leave to the district court the determination as to whether the BOEE's report could be admitted to attack the principal's

character for untruthfulness under Iowa Rule of Evidence 5.608 based on the evidence presented at the time of retrial.

## III.    Admission of Expert Testimony

Next the plaintiffs argue that the district court erred when it admitted the expert testimony of Jennifer Drobac, a law professor.  They argue her testimony (1) consisted of inadmissible legal conclusions; (2) lacked sufficient methodology or specialized knowledge; and (3) lacked the qualifications to serve as an expert on K–12 educational practice, applicable standards of care, and student supervision.  We review the district court's ruling on the admissibility of expert testimony for abuse of discretion.  *See State v. Kepner*, 27 N.W.3d 545, 553 (Iowa 2025).

Our state is "committed to a liberal view" when deciding whether expert testimony will assist the trier of fact.  *State v. Stendrup*, 983 N.W.2d 231, 238 (Iowa 2022) (quoting *Ranes v. Adams Lab'ys, Inc.*, 778 N.W.2d 677, 685 (Iowa 2010)).  Iowa Rule of Evidence 5.702 provides,

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue.

"An opinion is not objectionable just because it embraces an ultimate issue."  Iowa R. Evid. 5.704.  Expert testimony on the standard of care or standard of practice is generally permitted in negligence actions.  *Haskenhoff v. Homeland Energy Sols., LLC*, 897 N.W.2d 553, 600 (Iowa 2017).  But expert testimony as to a legal conclusion is inadmissible in an ordinary negligence action.  *Id.* at 601.

Beginning with Professor Drobac's qualifications to testify in this case, we conclude she was properly qualified to testify regarding K–12 educational practice, applicable standards of care, and student supervision. She has prior experience teaching in a middle school for two years. Additionally, she is a law school faculty member with expertise in compliance. And she has testified previously regarding compliance in the education setting. Based on our "liberal view" of expert admissibility we conclude Professor Drobac was qualified. *See Ranes*, 778 N.W.2d at 685.

Next, we address the plaintiffs' claim that Professor Drobac's expert opinion lacked sufficient methodology. We disagree. Professor Drobac testified that she is a compliance expert. She reviewed the totality of the evidence including depositions, reports, and exhibits. Then she utilized the school district's policies to determine whether the school district's conduct was violative of these policies. Our review of the record reveals no abuse of discretion in the district court's finding that the methodology in this opinion was sufficient. *See id.* at 691.

Finally, we address the plaintiffs' claim that Professor Drobac's testimony contained impermissible legal conclusions. Several times during her testimony, Professor Drobac was asked whether the school district acted within the standard of care. Here are two examples:

> **Q:** In reviewing the information in this case, did you opine on whether Urbandale met the standard of care to protect students? **A:** They did.
>
> . . . .
>
> **Q:** And can you explain why you believe they met the standard of care? **A:** So in—when I—when I came into this building, I saw exactly what my job had been in this case. It is some men make the rules, and administrators apply them, and it's in the rotunda of this building. We

have law pertaining to sexual harassment and discrimination, and it was my job to look at the policies, procedures, look at what I thought would happen, but is, ultimately, your job to decide, and I put the two together and said, yes, what I think happened actually complied with the policies and procedures.

The plaintiffs object and argue this violates Iowa Rule of Evidence 5.704. In response, the school district points us to our supreme court's opinion in *Haskenhoff* requiring expert evidence of standard of care. 897 N.W.2d at 600 ("Expert testimony on the standard of care or standard of practice is generally permitted in negligence actions."). We should note the supreme court held the testimony in that case, "skirted close to the line prohibiting testimony on legal conclusions." *Id.* In *Haskenhoff*, the expert explicitly testified that he was not informing the jury what the law is. *Id.* ("Q. And your testimony doesn't purport to tell the jurors what the law is proscribing sex harassment, does it? A. No, I do not speak to legal issues.").

Here, Professor Drobac went further. Not only did she inform the jury that there is law regarding sexual harassment and discrimination, but she then told them that she applied the law and found the school district was compliant. We find admission of this testimony to be an abuse of discretion by the district court because "expert testimony as to a legal conclusion is inadmissible in an ordinary negligence action." *See id.* at 601; *see also Bell v. Cmty. Ambulance Serv. Agency*, 579 N.W.2d 330, 338 (Iowa 1998) (affirming exclusion of opinion testimony of law enforcement trainer that ambulance driver's "actions were highly dangerous and likely to cause injury"); *Terrell v. Reinecker*, 482 N.W.2d 428, 430 (Iowa 1992) (holding it was reversible error to allow investigating police officer to testify to the legal conclusion that plaintiff "failed to yield the right-of-way"). On remand, we find the district court should limit the expert's testimony to ensure the expert does not testify to the ultimate legal issues in this case. Professor Drobac may testify

regarding the standard of care and whether based on Urbandale's policies the standard of care was met. However, the expert may not reach a legal conclusion that should be left for the jury.

## IV.     Exclusion of Other Acts Testimony

Next, the plaintiffs challenge the district court's exclusion of testimony regarding other acts of K.O. These included another instance where K.O. assaulted a young girl and testimony regarding K.O.'s dissemination of nude photos of R.R.S. We do not reach this issue and leave to the district court to determine whether this testimony should be allowed on retrial based on whether and how the evidence may be presented.

## V.     Inconsistent Verdict

Finally, the plaintiffs argue the jury rendered inconsistent verdicts. In their motion for new trial, the plaintiffs argued the verdicts were inconsistent because the jury found the school district was at fault but also found their fault was not the proximate cause of the plaintiff's injuries. Because we have vacated the judgment, this issue is moot, so we decline to reach it.

## CONCLUSION

Because the district court erred in instructing the jury on standard of care, we reverse the judgment against the plaintiffs and remand for a new trial. We further hold that the BOEE's investigative file is inadmissible during retrial, but we leave open the question of whether it could be admitted for the purpose of attacking the principal's character for untruthfulness. Finally, we direct the court to limit expert testimony to avoid reaching legal conclusions on the ultimate issues in the case.

**REVERSED AND REMANDED.**